# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

MARC LAMBERTY, JOSEPH MERCER,
CARSON KONOW, and COLLIN KONOW,
    *Plaintiffs*,

v.

CONNECTICUT STATE POLICE UNION,
KEVIN LEMBO,
*Comptroller, State of Connecticut*,
BENJAMIN BARNES,
*Secretary of Office of Policy and Management, State of Connecticut*, and
SANDRA FAE BROWN-BREWTON,
*Undersecretary of Labor Relations for the Office of Labor Relations, State of Connecticut*,
    *Defendants*.

No. 3:15-cv-378 (VAB)

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

On March 14, 2015, current and former Connecticut state troopers Marc Lamberty, Joseph Mercer, Carson Konow, and Collin Konow ("Plaintiffs") sued the Connecticut State Police Union ("the State Police Union"), Kevin Lembo, Benjamin Barnes, Lisa Grasso Egan,[1]

---

[1] The Court notes that in April 2018, Defendant Lisa Grasso Egan was nominated by Governor Dannell P. Malloy to serve as a Judge of the Connecticut Superior Court; her nomination was approved and confirmed by the Connecticut General Assembly in May 2018. *See* S. Joint Res. No. 54, Feb. Session (Conn. 2018). Judge Grasso Egan now serves in the Bridgeport Judicial District Courthouse. *See Superior Court Judges*, STATE OF CONN. JUD. BRANCH, https://www.jud2.ct.gov/judsearch/judsup.asp (accessed Oct. 19, 2018). Shortly thereafter, Defendant Sandra Fae Brown-Brewton became the Undersecretary of Labor Relations for the Office of Labor Relations of the State of Connecticut. *See* Complaint at ¶ 13, *Wholean v. CSEA SEIU Local 2001 et al.*, No. 3:18-cv-1008 (WWE) (D. Conn. June 13, 2018), ECF No. 1 (naming, in separate agency fee lawsuit filed on June 13, 2018, Sandra Fae Brown-Brewton as a defendant in her official capacity as Undersecretary of Labor Relations); *see also Division Contacts*, OFFICE OF POLICY AND MGMT., https://www.ct.gov/opm/cwp/view.asp?a=3006&q=383264 (accessed Oct. 19, 2018) (listing Sandra Brown-Brewton as Undersecretary of the Office of Labor Relations).

Because Judge Grasso Egan was sued in her official capacity as Undersecretary of Labor Relations, her successor is automatically substituted as a party, regardless of the parties' failure to so move or to amend the case caption; the

(Continued . . .)

and Sandra Fae Brown-Brewton (collectively, "State Defendants"). Complaint, dated Mar. 14, 2015 ("Compl."), ECF No. 1. Plaintiffs alleged that Defendants injured them by deducting "agency fees" (also known as "fair share fees" or "bargaining fees") from their pay without providing all the pre-collection notice and procedural safeguards that had been, at that time, articulated by the U.S. Supreme Court, in violation of their rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. *Id.*

On June 27, 2018, the U.S. Supreme Court decided *Janus v. AFSCME*, overturning *Abood v. Detroit Board of Education* and holding that any state withholding of fair share fees from public employees covered by collective bargaining agreements was impermissible under the First Amendment. *Janus v. AFSCME*, 585 U.S. ___ (slip op.), 138 S. Ct. 2448 (2018).

On August 9, 2018, Plaintiffs moved for summary judgment, arguing that there was no longer any dispute of material fact in light of the holding of *Janus*. *See* Plaintiffs' Motion for Summary Judgment, dated Aug. 9, 2018 ("Pls.' Mot."), ECF No. 162. Plaintiffs' motion also requests relief in the form of an award of costs and attorney's fees. *See* Plaintiffs' Memorandum of Law in Support of their Motion for Summary Judgment, dated Aug. 9, 2018 ("Pls.' Mem."), annexed to Pls.' Mot., ECF No. 162-2, at 8–10.

The State Defendants opposed summary judgment, arguing that the Court should deny the motion and dismiss the case as moot. *See* State Defendants' Memorandum of Law in Opposition to Motion for Summary Judgment, dated Aug. 30, 2018 ("State Defs.' Mem."), ECF No. 170. The State Police Union joined the State Defendants' opposition and agreed that

---

Court may also order such substitution at any time. FED. R. CIV. P. 25(d); *see also Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018); *Tanvir v. Tanzin*, 894 F.3d 449, 459 n.7 (2d Cir. 2018).

As Ms. Brown-Brewton was already a party, the Court ordered that Judge Grasso Egan's name be struck from the docket and that the caption be amended to reflect that Ms. Brown-Brewton is now named as a defendant in her official capacity as Undersecretary of Labor Relations for the Office of Labor Relations, State of Connecticut. Order, dated Oct. 19, 2018, ECF No. 181.

mootness is a threshold issue. *See* Objection to Motion for Summary Judgment, dated Aug. 30, 2018 ("Union Opp."), ECF No. 171.

For the following reasons, Plaintiffs' motion for summary judgment is **DENIED** without prejudice to renewal in the event there is an effort to reintroduce agency fees and to the extent the Plaintiffs have not been adequately reimbursed for past agency fees already imposed. Because Plaintiffs, however, may be prevailing parties in this action, Plaintiffs may file a post-judgment motion for attorney's fees and costs.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, current and former state troopers with the Connecticut State police, filed the original Complaint against Defendants on March 14, 2015, alleging that since they withdrew from membership in the State Police Union, the State Police Union and the State Defendants deducted fair share fees under CONN. GEN. STAT. § 5-280 from their wages, in violation of their rights under the First and Fourteenth Amendments. *See* Compl. On February 17, 2016, Plaintiffs filed a Second Amended Complaint. Second Amended and Supplemental Verified Complaint, dated Apr. 24, 2015 ("Second Am. Compl."), ECF No. 41.

Briefly, the Second Amended Complaint alleges five causes of action: (1) by requiring Plaintiffs to make any financial contribution in support of any union, CONN. GEN. STAT. § 5-280 violates their rights to free speech and association under the First and Fourteenth Amendments, Second Am Compl. ¶ 68; (2) the State Police Union and Mr. Lembo violated Mr. Lamberty's First and Fourteenth Amendment rights to be provided with appropriate pre-collection notice and procedural safeguards prior to the seizure of agency fees, *id.* ¶ 72; (3) the State Police Union and Mr. Lembo violated Mr. Lamberty's First and Fourteenth Amendment rights because the fee notice for the 2014–15 fee year failed to comply with proper constitutional safeguards, *id.* ¶ 76; (4) that the Union, Mr. Lembo, and/or their agents, violated the rights of Carson Konow, Collin

Konow, and Mr. Mercer by failing to honor their union membership resignations and by failing to provide them with constitutionally-required procedural safeguards, *id.* ¶¶ 82–83; and (5) the indemnification provisions of the State Police Union's collective bargaining agreements are void as against public policy, invalid, and unenforceable insofar as they cause the State Defendants to ignore consideration of whether agency fees violate the constitutional rights of non-members, *id.* ¶ 87. Plaintiffs sought a combination of monetary, injunctive and declaratory relief for these claims. *See id.* at 23–28 (prayer for relief).

On April 11, 2017, Plaintiffs moved for partial summary judgment on Count IV of the Second Amended Complaint. *See* Pls.' Motion for Summary Judgment, dated Apr. 11, 2017, ECF No. 106. Both the State Defendants and the State Police Union opposed that motion, and the Court scheduled oral argument for October 18, 2017. *See* State Defs.' Memorandum in Opposition to Motion for Partial Summary Judgment, dated June 14, 2017, ECF No. 118; Connecticut State Police Union Memorandum in Opposition to Motion for Partial Summary Judgment, dated June 15, 2017, ECF No. 120; Notice of Motion Hearing, dated Sept. 1, 2017, ECF No. 124. By the time of that argument, however, the U.S. Supreme Court had granted certiorari in *Janus*; this Court then suspended all pending deadlines and denied the motion for summary judgment, without prejudice, because the Supreme Court's decision in *Janus* could affect the outcome of the motion. *See* Order, dated Oct. 18, 2017, ECF No. 130; Order Denying Motion for Summary Judgment Without Prejudice, dated Oct. 27, 2017, ECF No. 135.

A few weeks after the *Janus* oral argument, this Court set a new schedule to resolve the case quickly once the Supreme Court decided *Janus*. *See* Order, dated Mar. 9, 2018, ECF No. 139. On June 27, 2018, the Supreme Court decided *Janus*, overruling *Abood* and holding that states could "no longer extract agency fees from nonconsenting employees." *Janus*, 138 S. Ct. at

2486, slip op. at 48–49 ("Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed . . . *Abood* was wrongly decided and is now overruled.") (internal citations omitted).

On June 29, 2018, State Defendant Sandra Fae Brown-Brewton, Undersecretary of Labor Relations for the Office of Labor Relations, State of Connecticut, issued General Notice No. 2018-06, instructing all Labor Relations Designees of the state that "In response to the *Janus* decision, the State shall immediately discontinue the collection of agency service fees from non-union members." *See* General Notice No. 2018-06 re: Agency Fees to Cease per Janus v. AFSCME, dated June 29, 2018, annexed as Ex. 2 to State Defendants' Motion to Dismiss, filed Oct. 1, 2018 in *Wholean v. CSEA SEIU Local 2001 et. al.*, 3:18-cv-1008-WWE (D. Conn. Oct. 1, 2018), ECF No. 39-2. That same day, State Defendant Benjamin Barnes also announced that he would be issuing new procedures to agencies in light of *Janus*. *See* Stephen Singer, *After Supreme Court Ruling, Malloy Administration Devising New Union Rules*, HARTFORD COURANT (June 29, 2018), http://www.courant.com/business/hc-biz-supreme-court-unions-connecticut-20180629-story.html. Comptroller Kevin Lembo's office publicly stated that withholding of agency fees would end effective with state employees' July 20 paychecks, reflecting the time period from June 22, 2018 to July 5, 2018. *See* Stephen Singer, *Connecticut Drops Fees For Some State Employees In Response To U.S. Supreme Court Ruling On Union Dues*, HARTFORD COURANT (July 2, 2018), http://www.courant.com/business/hc-biz-connecticut-state-employees-janus-20180702-story.html. In early August, Connecticut Attorney General George Jepsen issued legal guidance on implementation of *Janus*. *See* General Guidance Regarding the Rights and

5

Duties of Public-Sector Employers and Employees in the State of Connecticut after *Janus v. AFSCME Council 31*, https://portal.ct.gov/AG/General/Guidance_on_Janus; Stephen Singer, *Jepsen Outlines Connecticut's Compliance With Supreme Court's Union Fees Ruling*, HARTFORD COURANT (Aug. 9, 2018), http://www.courant.com/business/hc-biz-public-employees-20180809-story.html.

On August 9, 2018, Plaintiffs moved for summary judgment on Counts I and V of the Second Amended Complaint. *See* Pls.' Mot. at 1. Plaintiffs' motion also requests relief in the form of an award of costs and attorney's fees. *See* Pls.' Mem. at 8–10.

On August 21, 2018, the State Police Union informed the Court that it had "reimbursed the individual Plaintiffs for the entirety of their individual monetary demands (dues/fees that had been withheld plus claimed interest)" and requested a status conference with the Court to discuss the pending motion. *See* Status Report, filed Aug. 21, 2018, ECF No. 165.

On August 29, 2018, the Court held a telephonic status conference with the parties. During that call, Plaintiffs did not challenge the sufficiency of the reimbursements, but instead suggested other remaining injunctive relief rendered the case not moot. The Court, in turn, set a quick briefing schedule in hopes of speedily resolving the pending motion and the case as a whole.

On August 30, 2018, the State Defendants filed their opposition to the motion for summary judgment, arguing that the Court should deny the motion and dismiss the case as moot because any relief available to Plaintiffs was rendered moot in light of (1) the holding of *Janus*; (2) the State Defendants' decision to cease collection of all fair share fees post-*Janus*; and (3) the State Police Union's reimbursement of all previously-withheld fair share fees, plus interest, to Plaintiffs. *See* State Defs.' Mem. at 2–4.

That same day, the State Police Union also filed a memorandum of opposition, joining the State Defendants' mootness arguments and further arguing that no substantive decision on the motion for summary judgment was necessary, as mootness is a threshold issue. *See* Union Opp. at 1–3. The State Police Union also noted that because the collective bargaining agreement at issue expired on June 30, 2018, the challenge to the indemnification provision is now moot. *Id.* at 1. The State Police Union included images of the reimbursement checks it claims it sent to Plaintiffs with its opposition. *See* Check Images, annexed as Ex. A to Union Opp., ECF No. 171-1.

On September 7, 2018, Plaintiffs filed a reply brief, disputing that the case is moot. *See* Plaintiffs' Memorandum in Reply to Defendants' Oppositions to Pls.' Mot., dated Sept. 7, 2018 ("Pls.' Reply Mem."), ECF No. 175, at 1–2. Plaintiffs did not dispute that those checks were issued. They also do not directly dispute that the checks were for the proper amounts. In a footnote, they only state that there is some question as to "whether the refunds are properly calculated," but do not elaborate what that question is or their basis for that assertion. *See* Pls.' Reply Mem. at 1 n.1.

The Court held oral argument on September 13, 2018. *See* Minute Entry, dated Sept. 13, 2018, ECF No. 179. At oral argument, Plaintiffs claimed that they had no idea how the State Police Union had calculated the fees it reimbursed Plaintiffs. The State Police Union, in turn, stated that the amounts that had been paid back were those provided during the settlement conference.

## II. STANDARD OF REVIEW

Mootness is a threshold issue that courts must address when changes in circumstances occur that are claimed to moot a case. *See United States v. Juvenile Male*, 564 U.S. 932, 935–36

(2011) (mootness a threshold issue that prevented review of lower court decision on the merits); *North Carolina v. Rice*, 404 U.S. 244, 245–46 (1971) (finding court of appeals failed to consider "threshold issue of mootness," even though it was not urged to consider it by the parties).

This review is required because federal courts are courts of limited jurisdiction that, as a constitutional matter, may only adjudicate live cases or controversies. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) ("Article III of the Constitution grants the Judicial Branch authority to adjudicate "Cases" and "Controversies." In our system of government, courts have "no business" deciding legal disputes or expounding on law in the absence of such a case or controversy.") (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) ("In order to invoke federal-court jurisdiction, a plaintiff must demonstrate that he possesses a legally cognizable interest, or personal stake, in the outcome of the action. This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved. A corollary to this case-or-controversy requirement is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.") (internal citations and quotation marks omitted); *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) ("The inability of the federal judiciary 'to review moot cases derives from the requirement of Art. III of the Constitution under which exercise of judicial power depends upon the existence of a case or controversy.'") (quoting *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964)) (additional citations omitted).

A case becomes moot when there is no longer an ongoing injury that can be redressed through judicial action because the "'issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Already*, 568 U.S. at 91 (quoting *Murphy v. Hunt*,

455 U.S. 478, 481 (1982) (per curiam)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id.* (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)). Thus, "[i]f an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare*, 569 U.S. at 72 (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990)).

However, "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Service Employees International Union*, 567 U.S. 298, 307 (2012) (finding that union's offer to refund all past fees plus interest to class members did not moot case where a live controversy remained as to the adequacy of union's refund notice). "'As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox*, 567 U.S. at 307–08).

It is well-settled that significant changes in law are one type of intervening circumstance that can moot a claim or case. *See Bigelow v. Virginia*, 421 U.S. 809, 817–18 (1975) (affirming finding that state statute's amendment mooted the issue of overbreadth, as amendment effectively repealed its prior application such that there was no possibility that its previous form would be applied again to the appellant or chill rights of others); *Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 377–79 (2d Cir. 2004) (affirming finding that certain claims directed at town ordinance were rendered moot through amendments); *Granite State v. Town of Orange, Conn.*, 303 F.3d 450, 451–52 (2d Cir. 2002) (per curiam) (affirming denial of

9

injunctive relief as moot where town "completely revised its regulations through proper procedures" and had no "intention of returning to the prior regulatory regime").

It is also well-settled that, where a defendant's "voluntary cessation" of injury-causing conduct is alleged to have mooted a case, the case is not automatically deemed moot; rather, the defendant must show that the conduct is unlikely to reoccur with respect to the plaintiffs before the court. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (declining to find case moot where city's repeal of objectionable language would not preclude it from reenacting precisely the same provision in the future if district court judgment was vacated as moot, and where city had announced its intention to do so); *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 632 ("voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case" where defendant "is free to return to his old ways").

The defendant bears a "heavy burden" in such cases, and must show that "there is no reasonable expectation that the wrong will be repeated." *Grant*, 345 U.S. at 633; *see Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) ("The heavy burden of persua[ding] the court that the challenged [voluntarily ceased] conduct cannot reasonably be expected to start up again lies with the party asserting mootness.") (citation omitted).

This requirement ensures that defendants cannot simply insulate themselves from binding judicial review of conduct that is likely to reoccur. *Id.* at 632 ("The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement."); *United States v. Oreg. State Med. Soc.*, 345 U.S. 326, 333 (1952) ("When defendants are shown to have settled into a continuing practice or entered into a conspiracy violative of antitrust laws, courts will not assume that it has been abandoned without clear proof. It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when

abandonment seems timed to anticipate suit, and there is probability of resumption.") (internal citations omitted) (quoted in *Grant*, 345 U.S. at 632 n.5).

Finally, while the Supreme Court has held that an unaccepted offer of settlement that has expired, such as a Rule 68 offer, does not moot a case, its precedents also indicate that, in individual actions, a defendant's decision to fully pay plaintiffs the amount in controversy, and plaintiffs' acceptance of those payments, will extinguish those monetary claims. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670–72 (2016) (contrasting unaccepted Rule 68 offer cases with earlier cases where the Court found actual tender of full amounts in controversy to plaintiffs had mooted claims for actual damages).

## III. DISCUSSION

For three separate but related reasons, all Defendants argue mootness: (1) a change in law (*Janus*); (2) the State Defendants' decision to cease the collection of agency fees post-*Janus*; and (3) the State Police Union's reimbursement of the previously-withheld agency fees, plus interest. In addition, the State Police Union argues that the expiration of their collective bargaining agreement moots the challenge to the indemnification clause. In light of these four changes in circumstances, Defendants argue that Plaintiffs no longer possess a legally cognizable interest in the outcome of this litigation. The Court agrees.

Plaintiffs do not dispute that the State Police Union's reimbursements occurred, nor do they continue to assert a claim for actual damages from Defendants' withholding of agency fees.[2] Nevertheless, Plaintiffs contend that they continue to possess legally cognizable interests in the litigation because they continue to seek the following remedies: (1) a declaratory judgment that

---

[2] While Plaintiffs claimed at the oral argument that the fees may not have been properly calculated, their papers provided no support for this. As discussed below, to the extent that Plaintiffs can actually demonstrate, with evidence, that the State Police Union still owes them additional fees, they may move to re-open this case to resolve that issue alone.

11

Connecticut's agency fee statute is unconstitutional under *Janus*; (2) an injunction preventing the State Defendants from enforcing the agency fee statute; and (3) an injunction against the indemnification clause in the Union's collective bargaining agreement with the State. They therefore insist that an ongoing case or controversy remains to be adjudicated. The Court disagrees.

Plaintiffs must show that they continue to possess legally cognizable interests in spite of the change in circumstances that is claimed to have mooted the case. In other words, they must be able to demonstrate that the judicial relief they are still seeking would actually redress past, ongoing, or future injuries. *See Already*, 568 U.S. at 100 ("Already's only legally cognizable injury—the fact that Nike took steps to enforce its trademark—is now gone and, given the breadth of the covenant, cannot reasonably be expected to recur. There being no other basis on which to find a live controversy, the case is clearly moot."); *Lewis*, 494 U.S. at 479 ("the Article III question is not whether the requested relief would be nugatory as to the world at large, but whether *Continental* has a stake in that relief. Even in order to pursue the declaratory and injunctive claims, in other words, Continental must establish that is has a 'specific live grievance' against the application of the statutes . . . and not just an 'abstract disagreement' over the constitutionality of such application.") (internal citations omitted).

Under well-settled Article III standing doctrine, plaintiffs seeking to invoke federal court jurisdiction must show that they have suffered, are suffering, or will be threatened with an injury in fact that is fairly traceable to the defendant's conduct and is likely to be redressed through judicial action. *Allen v. Wright*, 468 U.S. 737, 751 (1984). Courts' mootness inquiries similarly examine whether plaintiffs possess ongoing injuries that can be redressed through judicial action—not whether they simply want relief. *See, e.g.*, *City of Erie v. Pap's A.M.*, 529 U.S. 277,

288 (2000) ("The city has an ongoing injury because it is barred from enforcing the public nudity provisions of its ordinance. If the challenged ordinance is found constitutional, then Erie can enforce it, and the availability of such relief is sufficient to prevent this case from being moot.") (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992) ("Even though it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that occurred when the IRS obtained the information on the tapes, a court does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession. The availability of this possible remedy is sufficient to prevent this case from being moot.")); *see also Warth v. Seldin*, 422 U.S. 490, 499 n.10 (1975) ("The standing question thus bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention—and of mootness—whether the occasion for judicial intervention persists.").

The Court must therefore address whether each of the alleged injuries continue to exist in light of the relevant change in circumstances, and in light of the actual Plaintiffs who are before the Court. In other words, the Court must determine whether any Plaintiff continues to possess "any concrete interest, however small, in the outcome of the litigation." *Chafin*, 568 U.S. at 172. There are, at present, two groups of Plaintiffs: those who are currently retired from public employment and those who are not. The Court will evaluate each group in turn.

**1. Retired Plaintiffs Marc Lamberty and Joseph Mercer**

Mr. Lamberty retired from state service shortly after this lawsuit began, on April 1, 2015, and Mr. Mercer retired on January 1, 2017. *See* Pls.' Reply Mem. at 3 n.3. Plaintiffs do not contend that either is interested in returning to state employment in the near future.

By its terms, the statute at issue only requires agency fees to be deducted from the payroll of current employees. *See* CONN. GEN. STAT. § 5-280 ("If an exclusive representative has been designated for the employees in an appropriate collective bargaining unit, each employee in such unit who is not a member of the exclusive representative shall be required, as a condition of continued employment, to pay to such organization for the period that it is the exclusive representative, an amount equal to the regular dues, fees and assessments that a member is charged."). Having retired, however, neither Mr. Lamberty nor Mr. Mercer are subject to the collection of any agency fees in the future.

Their injury is their claim for the agency fees that had previously been withheld during their employment. But that injury appears to have been addressed in its entirety when the Union reimbursed Mr. Lamberty and Mr. Mercer for their previously-withheld fees, plus interest. To the extent that this issue remains, Mr. Lamberty and Mr. Mercer can move to re-open the case and address these fees. Nothing in their motion for summary judgment, which stated that there were no material facts in dispute, provided the Court with any basis for further relief here.

Mr. Lamberty and Mr. Mercer, as well as the other plaintiffs, nevertheless still seek nominal damages. In their view, "a live claim for nominal damages 'suffice[s] to deflect mootness.'" Pls.' Reply Mem. at 8 (quoting WRIGHT & MILLER, FED. PRAC. & PROC. § 3533.3 (1984). To support this argument, they cite a number of cases: *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *Farrar v. Hobby*, 506 U.S. 103, 112 (1992); *Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001); *Loyal Tire & Auto Ctr., Inc. v. Town of Woodbury*, 445 F.3d 136, 151 (2d Cir. 2006); and *Van Wie v. Pataki*, 267 F.3d 109, 115 n.4 (2d Cir. 2001). *See* Pls.' Reply Mem. at 8–9.

Plaintiffs claim that "*Carey* and its progeny stand for the proposition 'that a claim for nominal damages avoids mootness' in cases alleging a constitutional deprivation." Pls.' Reply at 9. *Carey*, however, permitted nominal damages to be awarded to a civil rights plaintiff when there was no proof that denial of procedural due process had resulted in actual injury. *See Carey*, 435 U.S. at 266 ("Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.") (citations and note omitted). *Farrar* similarly emphasizes that nominal damages are an alternative to actual damages under § 1983, as "the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury." *Farrar*, 506 U.S. at 115.

In *Loyal Tire*, for example, the Second Circuit reversed the district court for failing to reach plaintiff's compensatory claims under the dormant Commerce Clause after granting plaintiff prospective injunctive relief—not because it concluded there was an injury that could survive mootness, but because the district court had not evaluated whether there was an injury that gave it standing at all. *See Loyal Tire*, 445 F.3d at 150–51. In *Van Wie*, the Second Circuit—in a footnote—explained that plaintiffs in a case alleging constitutional violations under § 1983 had failed to make a claim for money damages at all; thus, had they requested merely nominal damages, they could have avoided a finding of mootness. *Van Wie*, 267 F.3d at 115 n.4.

Because Mr. Lamberty and Mr. Mercer have proof of actual injury, the previously withheld agency fees, and have received compensatory damages through the Union's reimbursement of these fees, there is no basis for the awarding of nominal damages. It is well-settled that plaintiffs are not entitled to nominal damages where they have also received

compensatory damages. *See Gentile v. Cty. of Suffolk*, 926 F.2d 142, 155 (2d Cir. 1991) ("[Plaintiffs] argue first, citing *Carey v. Piphus*, that they are entitled to an award of nominal damages as a matter of law from the individual defendants because they were found liable for violating their constitutional rights. Accordingly, plaintiffs claim, the district court should either have utilized an additur to satisfy the nominal damages requirement or ordered a new trial on the issue of damages against the individual defendant officers. We believe that this argument is substantially without merit . . . . *Carey* does not address the facts of the present case, since it deals with circumstances in which a plaintiff has suffered a violation of a fundamental constitutional right (i.e., procedural due process) but has failed to offer proof of actual injury . . . In the present case, however, there has been proof of actual injury and, moreover, this injury has been compensated by the jury's award of damages.").

Mr. Lamberty's and Mr. Mercer's claims therefore are moot.

**2. Currently Employed Plaintiffs Carson Konow and Collin Konow**

Plaintiffs Carson and Collin Konow primarily assert three continuing injuries. One of these alleged continuing injuries, the claim for nominal damages, fails, as did the similar claims of retired members, Mr. Lamberty and Mr. Mercer. These plaintiffs also have received compensatory damages for their alleged constitutional injuries.

One of these Plaintiffs' other claims is that they remain subject to the provisions of Connecticut law they challenge, which "remain intact and on the books." Pls.' Reply Mem. at 6. In Plaintiffs' view, Defendants remain free to resume withholding agency fees at any time, and Defendants' decision to cease withholding fees is an "internal policy change" that does not make absolutely clear that the challenged conduct is a thing of the past. *Id.* (citing *Laidlaw*, 528 U.S. at 189). "Far from it," they insist, for "the State Defendants' policy could change with the tides or

16

at their [Union] masters' voice; they could revert to their old practice at a moment's notice." *Id.* The Court disagrees.

*Janus* reversed decades of precedent, established with *Abood*, that parties such as the State Defendants and the State Police Union had relied on in continuing to withhold agency fees. In response, Defendants ended their collection of agency fees. While Plaintiffs claim the Court must assess this as an instance of voluntary cessation, there was nothing voluntary about this decision. As Plaintiffs point out, one of the State Defendants, Comptroller Kevin Lembo, sharply denounced the holding in *Janus*, declaring that it "begins the unraveling of rights and protections that hold up Connecticut's middle class." Pls.' Reply Mem. at 4 n.5, App'x A.

Nevertheless, Mr. Lembo—and all the Defendants—complied with *Janus*. They did so not because they wanted to evade the Court's jurisdiction, as is the case in so many voluntary cessation cases, but because the Supreme Court's new and controlling precedent not only affected the rights of the parties immediately before it (the state of Illinois) but also announced a broad rule invalidating every state law permitting agency fees to be withheld. In unequivocal terms, the Supreme Court stated that: "States and public-sector unions may no longer extract agency fees from nonconsenting employees." *Janus,* 138 S. Ct. at 2486, slip op. at 48.

The law of the land thus has changed and there no longer is a legal dispute as to whether public sector unions can collect agency fees. They cannot. Moreover, none of the Defendants in this case are disputing that the law of the land has changed, or are trying to collect agency fees. In fact, indisputably, all of the Defendants have agreed to return the agency fees owed to the Plaintiffs. *See Yohn v. Cal. Teachers Ass'n*, No. 8:17-cv-202-JLS-DFM, Order Granting Defs.' Motions to Dismiss and Denying Pls.' Motion for Summary Judgment as Moot, ECF No. 198, at 6 (C.D. Cal. Sept. 28, 2018) (finding another agency fee challenge moot where plaintiffs did not

dispute that fees deducted from paychecks prior to *Janus* for post-*Janus* pay periods have been refunded with interest).

Finally, Plaintiffs argue that they remain subject to the indemnification clause of the Union's collective bargaining agreement. The indemnification clause, however, can no longer be said to be causing any injury, as Defendants are no longer withholding agency fees. Moreover, the collective bargaining agreement containing the indemnification clause expired as of June 30, 2018; the clause therefore is no longer in effect.

In the end, there is nothing for this Court to order Defendants to do now. Indeed, Plaintiffs' motion contains nothing to suggest that any reversal to a pre-*Janus* view of the law is imminent. As a result, their real concern is some unknown event at some unknown time. While there is no reason for the Court to award relief rooted solely in speculation, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (for plaintiff to have standing, "it must be "likely," as opposed to merely "speculative," that the injury will be 'redressed by a favorable decision.") (citation omitted), the Court nevertheless will deny this motion without prejudice. *Cf. Danielson v. Inslee*, No. 18-cv-5206-RJB, 2018 WL 3917937, at *3 (W.D. Wash. Aug. 16, 2018) ("Because the Court has not reached the merits and in acknowledgment that, although unlikely, the State could theoretically reverse course on its agency policy, the defendants should be dismissed without prejudice.").

By denying the motion without prejudice, the Court permits Plaintiffs Carson and Collin Konow the ability to return to federal court if Defendants were to resume their collection of agency fees. In addition, as noted above, Plaintiffs, for the first time, now argue that their fee reimbursements had not been properly calculated. That issue is not properly before the Court. To the extent that Plaintiffs can actually demonstrate, with evidence, that the State Police Union still

owes them additional fees, they may move to re-open this case for reconsideration of that issue alone.

### 3. Costs and Attorney's Fees

In an action brought under 42 U.S.C. § 1983, "[t]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" of the action. 42 U.S.C. § 1988. To the extent that the Plaintiffs believe they are "prevailing parties" within the meaning of Section 1988, they shall file the proper motion, along with the appropriate supporting documentation—including contemporaneous time records consistent with Second Circuit law—by November 16, 2018. *See Scott v. City of New York*, 643 F.3d 56, 58–59 (2d Cir. 2011); *Green v. City of New York*, 403 F. App'x. 626, 630 (2d Cir. 2010); *N.Y. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). Any opposition to this motion shall be filed by December 14, 2018 and any reply to any opposition shall be filed by December 28, 2018.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is **DENIED** without prejudice to renewal in the event there is an effort to reintroduce agency fees and to the extent the Plaintiffs have not been adequately reimbursed for past agency fees already imposed. The Clerk of the Court is respectfully directed to administratively close this case.

If Plaintiffs wish to move for an award of attorney's fees and costs, they are directed to do so by November 16, 2018. The State Defendants and the State Police Union may file any opposition by December 14, 2018, with any reply to the opposition due by December 28, 2018.

**SO ORDERED** at Bridgeport, Connecticut, this 19th day of October, 2018.

                                                           /s/ Victor A. Bolden  
                                                           Victor A. Bolden  
                                                           United States District Judge