# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARC LAMBERTY, JOSEPH MERCER, CARSON KONOW, and COLLIN KONOW, <br>    *Plaintiffs*, <br><br> v. <br><br> CONNECTICUT STATE POLICE UNION, KEVIN LEMBO, <br> *Comptroller, State of Connecticut*, <br> MELISSA MCCAW, <br> *Secretary of Office of Policy and Management, State of Connecticut*, and <br> SANDRA FAE BROWN-BREWTON, <br> *Undersecretary of Labor Relations for the Office of Labor Relations, State of Connecticut*, <br>    *Defendants*. | No. 3:15-cv-378 (VAB) |

**RULING ON MOTION FOR ATTORNEY'S FEES AND EXPENSES**

On June 27, 2018, the U.S. Supreme Court decided *Janus v. AFSCME*, overturning *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), and held that any state withholding of fair share fees from public employees covered by collective bargaining agreements was impermissible under the First Amendment. *See Janus v. AFSCME*, 585 U.S. ___ (slip op.), 138 S. Ct. 2448 (2018).

This ruling addresses whether plaintiffs whose claims for declaratory and injunctive relief were mooted by *Janus*, and whose claims for actual monetary damages were mooted by defendants' unilateral decision to refund the previously-withheld agency fees, may be considered "prevailing parties" entitled to an award of attorney's fees and costs under 42 U.S.C. § 1988.

Currently pending before the Court is a motion by Marc Lamberty, Joseph Mercer, Carson Konow, and Collin Konow ("Plaintiffs") seeking this determination and, therefore, an award of fees and costs of at least $271,707.46 from the Connecticut State Police Union ("the State Police Union"), and Kevin Lembo, Melissa McCaw,[1] and Sandra Fae Brown-Brewton (collectively, "State Defendants," and collectively with the State Police Union, "Defendants"). Plaintiffs' Petition for Attorneys' Fees and Expenses Pursuant to 42 U.S.C. § 1988, dated Nov. 16, 2018 ("Fee Mot."), ECF No. 183.

Both the State Police Union and the State Defendants oppose the motion on the grounds that Plaintiffs are not prevailing parties under 42 U.S.C. § 1988. *See* State Police Union's Objection to Fee Mot., dated May 31, 2019 ("Union Opp."), ECF No. 196; State Defendants' Memorandum of Law in Opposition to Fee Mot., dated May 30, 2019 ("State Defs.' Opp."), ECF No. 195.

For the reasons explained below, the Court finds that Plaintiffs are not prevailing parties under 42 U.S.C. § 1988, and therefore **DENIES** Plaintiffs' motion for attorney's fees and costs.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Familiarity with the facts and prior proceedings, as detailed in the Court's October 19, 2018 Ruling and Order, is assumed. *See Lamberty v. Conn. State Police Union*, No. 3:15-cv-378 (VAB), 2018 WL 5115559, at *2–4 (D. Conn. Oct. 19, 2018).

On August 9, 2018, Marc Lamberty, Joseph Mercer, Carson Konow, and Collin Konow ("Plaintiffs") moved for summary judgment, arguing that there was no longer any dispute of

---

[1] At the time Plaintiffs' motion was filed, Benjamin Barnes was the Secretary of the Office of Policy and Management and a named defendant. Because he was sued in his official capacity, his successor Melissa McCaw was automatically substituted as a party, regardless of the parties' failure to so move or to amend the case caption. FED. R. CIV. P. 25(d); *see also Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018); *Tanvir v. Tanzin*, 894 F.3d 449, 459 n.7 (2d Cir. 2018). The Court ordered that the Clerk of the Court amend the docket to reflect this automatic substitution on September 3, 2019. Order to Amend Case Caption, dated Sept. 6, 2019, ECF No. 201.

material fact in light of the holding of *Janus*. *See* Plaintiffs' Motion for Summary Judgment, dated Aug. 9, 2018 ("Pls.' Summ. J. Mot."), ECF No. 162; Plaintiffs' Memorandum of Law in Support of their Motion for Summary Judgment, dated Aug. 9, 2018 ("Pls.' Summ. J. Mem."), annexed to Pls.' Mot., ECF No. 162-2. At that time, Plaintiffs also requested relief in the form of an award of costs and attorney's fees. *See* Pls.' Summ. J. Mem. at 8–10.

On August 30, 2018, the State Defendants and the State Police Union opposed summary judgment, arguing that all of Plaintiffs' claims were moot. State Defendants' Memorandum of Law in Opposition to Motion for Summary Judgment, dated Aug. 30, 2018 ("State Defs.' Mem."), ECF No. 170; Objection to Motion for Summary Judgment, dated Aug. 30, 2018 ("Union Opp."), ECF No. 171.

On October 19, 2018, the Court denied Plaintiffs' motion for summary judgment, holding that all of Plaintiffs' claims had become moot. *See Lamberty*, 2018 WL 5115559, at *9 ("In the end, there is nothing for this Court to order Defendants to do now.").

The State Police Union's reimbursement of their previously-withheld agency fees, plus interest, mooted Mr. Lamberty and Mr. Mercer's claims. *See id.* at *7 ("Mr. Lamberty retired from state service shortly after this lawsuit began, on April 1, 2015, and Mr. Mercer retired on January 1, 2017 . . . . Their injury is their claim for the agency fees that had previously been withheld during their employment. But that injury appears to have been addressed in its entirety when the Union reimbursed Mr. Lamberty and Mr. Mercer for their previously-withheld fees, plus interest.").

Carson and Collin Konow's claims for retrospective relief were similarly mooted by the State Police Union's reimbursement of their previously-withheld agency fees, plus interest, while their claims for declaratory and injunctive relief were mooted by the Supreme Court's broad,

unequivocal holding in *Janus* invalidating all state laws requiring the withholding of agency fees from nonconsenting employees, and the State Defendants' immediate compliance with that holding. As this Court stated:

> Mr. Lembo—and all the Defendants—complied with *Janus*. They did so not because they wanted to evade the Court's jurisdiction, as is the case in so many voluntary cessation cases, but because the Supreme Court's new and controlling precedent not only affected the rights of the parties immediately before it (the state of Illinois) but also announced a broad rule invalidating every state law permitting agency fees to be withheld . . . . The law of the land thus has changed and there no longer is a legal dispute as to whether public sector unions can collect agency fees. They cannot. Moreover, none of the Defendants in this case are disputing that the law of the land has changed, or are trying to collect agency fees. In fact, indisputably, all of the Defendants have agreed to return the agency fees owed to the Plaintiffs.

*Id.* at *9 (citation omitted).

The Court's denial was without prejudice to renewal, in the event there is an effort to re-introduce agency fees, and to the extent the Plaintiffs had not been adequately reimbursed for past agency fees already imposed. *Id.* at *9 ("By denying the motion without prejudice, the Court permits Plaintiffs Carson and Collin Konow the ability to return to federal court if Defendants were to resume their collection of agency fees. In addition, as noted above, Plaintiffs, for the first time, now argue that their fee reimbursements had not been properly calculated. That issue is not properly before the Court. To the extent that Plaintiffs can actually demonstrate, with evidence, that the State Police Union still owes them additional fees, they may move to re-open this case for reconsideration of that issue alone."). The Court accordingly directed the Clerk of the Court to close the case administratively.

The Court also held that, to the extent that Plaintiffs believed they were "prevailing parties" within the meaning of 42 U.S.C. § 1988, they were required to file a motion with the

4

appropriate supporting documentation, consistent with Second Circuit law, by November 16, 2018. *Id.* at *9.

On November 16, 2018, Plaintiffs moved for an award of attorney's fees and costs under 42 U.S.C. § 1988. Fee Mot. Plaintiffs submitted three declarations from attorneys W. James Young, Sarah E. Hartsfield, and Marc P. Mercier in support of the motion, along with contemporaneous time records. *See* Declaration of W. James Young, dated Nov. 16, 2018 ("Young Decl."), annexed as Ex. A to Fee Mot., ECF No. 183-1; Declaration of Sarah E. Hartsfield, dated Nov. 16, 2018 ("Hartsfield Decl."), annexed as Ex. B to Fee Mot., ECF No. 183-5; Declaration of Marc P. Mercier, dated Nov. 12, 2018 ("Mercier Decl."), annexed as Ex. C to Fee Mot., ECF No. 183-6.

In the motion, Plaintiffs documented 278.7 hours spent by Mr. Young on the case and 824.6 hours spent by Ms. Hartsfield on the case. *See* Attachment 1 to Young Decl., ECF No. 183-2. With reductions for travel and billing judgment, Plaintiffs seek compensation for 767.2 hours, and a total fee award of $246,712.50, based on hourly rates of $500 for Mr. Young and $250 for Ms. Hartsfield. *See* Fee Mot. at 12. Plaintiffs also sought reimbursement of fees and expenses for local counsel Mr. Mercier in the amount of $18,235, and $6,759.96 in actual costs and expenses. *See id.* at 13; Attachment 2 to Young Decl., ECF No. 183-3.

On November 19, 2018, the Court referred the parties to United States Magistrate Judge Holly B. Fitzsimmons to determine whether the fee motion could be resolved without further litigation. Order Referring Case, dated Nov. 19, 2018, ECF No. 185.

Following a period of delay and a stay of the briefing schedule for the motion, the Court set new deadlines for the State Defendants and the State Police Union to respond to the motion. Scheduling Order, dated Apr. 10, 2019, ECF No. 194.

On May 30, 2019, the State Defendants opposed the motion. State Defs.' Opp.

On May 31, 2019, the State Police Union opposed the motion. Union Opp.; State Police Union's Memorandum of Law in Support of Union Opp., dated May 31, 2019 ("Union Mem.") annexed to Union Opp.

On June 20, 2019, Plaintiffs filed a reply in support of the motion. Plaintiffs' Memorandum Replying to Defendants' Oppositions to Fee Mot., dated Jun. 20, 2019 ("Reply"), ECF No. 197. In their reply, Plaintiffs requested oral argument on their motion. *Id.* at 1. Plaintiffs also submitted a supplemental declaration from Mr. Young, requesting an additional $18,475 in fees for 36.95 hours he expended related to the settlement conference and in responding to Defendants' oppositions, and an additional $772.80 in related expenses. Supplemental Declaration of W. James Young in Support of Fee Mot., dated Jun. 20, 2019 ("First Supp. Young Decl."), annexed as Ex. D to Reply, ECF No. 197-1.

On July 15, 2019, the Court scheduled a hearing on the motion for September 3, 2019. Notice of E-Filed Calendar, dated Jul. 15, 2019, ECF No. 198.

On August 1, 2019, Plaintiffs submitted an additional supplemental declaration from Mr. Young, requesting an additional $3,500 in fees for Mr. Young's time related to the hearing and $744.28 in expenses. Second Supplemental Declaration of W. James Young in Support of Fee Mot., dated Aug. 1, 2019 ("Second Supp. Young Decl."), ECF No. 199

As of this filing, Plaintiffs' total request for fees and expenses stands at $294,426.74. Second Supp. Young Decl. ¶ 3.

On September 3, 2019, the Court held oral argument on the motion and reserved decision. Minute Entry, dated Sept. 3, 2019, ECF No. 200.

## II. STANDARD OF REVIEW

In an action brought under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" of the action. 42 U.S.C. § 1988(b); *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 102 (2d Cir. 2009) ("Section 1988(b) permits reasonable attorney's fees and costs to be awarded to a 'prevailing party' in any action or proceeding in connection with enforcing the provisions of 42 U.S.C. § 1983.") (citing 42 U.S.C. § 1988(b)). But whether a party is a "prevailing party" under 42 U.S.C. § 1988(b) is a question of law, not of discretion. *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) ("[W]hether a litigant is a prevailing party under a fee-shifting provision constitutes a question of law warranting *de novo* review.") (internal quotation marks and alterations omitted) (quoting *Dattner v. Conagra Foods, Inc.*, 458 F.3d 98, 100 (2d Cir. 2006) (per curiam)); *Perez v. Westchester Cty. Dep't of Corrs.*, 587 F.3d 143, 149 (2d Cir. 2009) ("Whether Plaintiffs are prevailing parties . . . is a question of law that we review de novo . . . . The District Court's calculation of reasonable attorneys' fees, on the other hand, will stand unless we find it to be an abuse of discretion.") (citations omitted).

Generally, "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "Where settlement [of the fee request] is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id.* "The applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Id.* (citation and footnote omitted).

If "prevailing party" status is established, the "lodestar amount" is generally "[t]he starting point for the determination of a reasonable fee," *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 424 (2d Cir. 1999) (citing *Hensley*, 461 U.S. at 433), but "the court retains substantial discretion to take into account the specific procedural history and facts of each case," *Green v. Torres*, 361 F.3d 96, 99 (2d Cir. 2004) (citing *Hensley*, 461 U.S. at 435–37). "[T]he degree of success obtained by the plaintiff is the most important factor in determining the appropriate fee award under § 1988(b)." *Green*, 361 F.3d at 99 (citing *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 760 (2d Cir. 1998)); *accord Patterson v. Balsamico*, 440 F.3d 104, 123 (2d Cir. 2006) ("The Supreme Court has held that, in awarding attorneys' fees, 'the most critical factor is the degree of success obtained.'") (quoting *Hensley*, 461 U.S. at 436).

### III. DISCUSSION

In order for a plaintiff in an action brought under 42 U.S.C. § 1983 to be a "prevailing party", there must be a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001); *N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester Cty. Taxi & Limousine Comm'n*, 272 F.3d 154, 158–59 (2d Cir. 2001) ("Despite the fact that the holding in *Buckhannon* applied to the FHAA and ADA, it is clear that the Supreme Court intends the reasoning of the case to apply to § 1988 as well . . . . Because the Federation's lawsuit did not result in a judicially sanctioned change in the legal relationship of the parties, the Federation is not a prevailing party and the district court's award of fees must be and is reversed."); *Perez*, 587 F.3d at 149 n.5 ("*Buckhannon* concerned the fee-shifting provisions of the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3613(c), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12205, rather than § 1988(b). As we have previously held, however, 'the standards used to interpret the

8

term prevailing party under any given fee-shifting statute are generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party.'") (quoting *J.C. v. Reg'l Sch. Dist. 10*, 278 F.3d 119, 123 (2d Cir. 2002)); *see also CRST Van Expedited, Inc. v. E.E.O.C.*, 136 S. Ct. 1642, 1646 (2016) ("Congress has included the term 'prevailing party' in various fee-shifting statutes, and it has been the Court's approach to interpret the term in a consistent manner.") (citing *Buckhannon*, 532 U.S. at 602–03 & n.4, and applying its holding to Title VII context).

Put another way, to be a prevailing party, "a plaintiff must not only achieve some 'material alteration of the legal relationship of the parties,' but that change must also be judicially sanctioned." *Roberson v. Giuliani*, 346 F.3d 75, 79 (2d Cir. 2003) (citing *N.Y. State Fed'n of Taxi Drivers*, 272 F.3d at 157); *see Perez*, 587 F.3d at 149 ("[P]laintiffs are only eligible for attorneys' fees if they 'achieve some material alteration of the legal relationship' between them and their adversaries, *and* that change bears a 'judicial imprimatur.'") (quoting *Roberson*, 346 F.3d at 79–80).

The State Defendants argue that Plaintiffs "did not prevail by virtue of court ordered relief, depriving them of prevailing party status for an award of attorney's fees." State Defs.' Opp. at 9. The State Police Union argues that Plaintiffs are not prevailing parties because there has not been "a 'judicially sanctioned change in the legal relationship'" as a result of Plaintiffs' lawsuit. Union Mem. at 4 (quoting *Buckhannon*, 532 U.S. at 605).

Plaintiffs advance two different theories of "judicial imprimatur" in support of their argument for having achieved "prevailing party" status.

First, Plaintiffs argue that *Janus* itself was the source of the "judicial imprimatur." Fee Mot. at 16 ("Put simply, the Supreme Court's decision in *Janus* required the substantive relief

9

obtained by the Troopers, virtually everything that they were seeking when they filed their Complaint, and the Court's Order (ECF No. 182) confirms that victory.").

Second, Plaintiffs argue that the Court's Ruling and Order finding their claims moot is equivalent to a consent decree, or private settlement agreement over which a court retains enforcement jurisdiction, because it "involves an obligation to comply with the court's directives." Fee Mot. at 17 (citations and internal quotation marks omitted). Because both consent decrees and settlement agreements over which a court retains enforcement jurisdiction have been recognized as judicially sanctioned changes in the legal relationship between parties entitling a plaintiff to prevailing party status,[2] Plaintiffs argue that they, too, are entitled to prevailing party status by virtue of the Court's decision to deny the motion for summary judgment without prejudice. *Id.*

The Court disagrees.

Under Plaintiff's first theory, any Supreme Court decision that definitively settled the legal question underlying a pending district court civil rights action would confer "prevailing

---

[2] *See Buckhannon*, 532 U.S. at 604 ("In addition to judgments on the merits, we have held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees. Although a consent decree does not always include an admission of liability by the defendant, it nonetheless is a court-ordered change in the legal relationship between the plaintiff and the defendant.") (citations, internal quotation marks, and alterations omitted); *Roberson*, 346 F.3d at 82 ("[T]he district court's retention of jurisdiction in this case is not significantly different from a consent decree and entails a level of judicial sanction sufficient to support an award of attorney's fees . . . . because the court has the general responsibility to ensure that its orders are fair and lawful, it retains some responsibility over the terms of a settlement agreement as the parties' obligation to comply with the agreement was made a part of its order . . . . Thus, when the district court retained jurisdiction according to the procedures approved in *Kokkonen* it gave judicial sanction to a change in the legal relationship of the parties, regardless of the actual scrutiny applied.") (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)); *Perez*, 587 F.3d at 152 ("We have never squarely considered the second *Kokkonen* scenario, that of an order of dismissal that explicitly incorporates the terms of a settlement, as does the Order of Settlement before us today. But the logic of *Roberson* suggests that such orders must satisfy *Buckhannon* . . . . This is not a case where dismissal was effected by stipulation, or mutual agreement of the parties, and did not require any judicial action; rather, the settlement was only made operative by the Court's review and approval. In a quite literal sense, it was the District Court's imprimatur that made the settlement valid.") (citations, internal quotation marks, alterations, and footnote omitted).

party" status upon the plaintiffs in the pending action, regardless of whether the action was filed three years before the Supreme Court's decision (as here) or a mere three weeks beforehand.

But this Court only held that *Janus* had the effect of mooting the Plaintiffs' claims for prospective injunctive and declaratory relief. *See Lamberty*, 2018 WL 5115559, at *9 ("Mr. Lembo—and all the Defendants—complied with *Janus*. They did so not because they wanted to evade the Court's jurisdiction, as is the case in so many voluntary cessation cases, but because the Supreme Court's new and controlling precedent not only affected the rights of the parties immediately before it (the state of Illinois) but also announced a broad rule invalidating every state law permitting agency fees to be withheld . . . . The law of the land thus has changed and there no longer is a legal dispute as to whether public sector unions can collect agency fees. They cannot. Moreover, none of the Defendants in this case are disputing that the law of the land has changed, or are trying to collect agency fees.") (citation omitted).

The only distinct "relief" arguably achieved by Plaintiffs, independent of the result in *Janus*, was on their claim for actual damages for the State Police Union's reimbursement of the previously-withheld agency fees. As this Court recognized, however, the State Police Union's voluntary decision to reimburse those fees, with interest, mooted that claim. *See id.* at *7 ("Mr. Lamberty retired from state service shortly after this lawsuit began, on April 1, 2015, and Mr. Mercer retired on January 1, 2017 . . . . Their injury is their claim for the agency fees that had previously been withheld during their employment. But that injury appears to have been addressed in its entirety when the Union reimbursed Mr. Lamberty and Mr. Mercer for their previously-withheld fees, plus interest."); *see also id.* at *5 (explaining that the Supreme Court's precedents "indicate that, in individual actions, a defendant's decision to fully pay plaintiffs the amount in controversy, and plaintiffs' acceptance of those payments, will extinguish those

11

monetary claims.") (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 670–72 (2016)). In other words, the Supreme Court's decision in *Janus* did not directly compel the reimbursements.

Of course, as Plaintiffs note, the reimbursements would not have been achieved "but-for" this lawsuit. *See, e.g.*, Reply at 12 ("There can be little doubt that, had the Troopers not pursued their claims, they would not have preserved their ability to obtain the refunds made by CSPU, and certainly not for [the] period exceeding the two-year statute of limitations (CONN. GEN. STAT. § 52-584) applying to their claims. Had the Troopers not filed and pursued their instant lawsuit, a portion of their claims . . . would have been extinguished by the passage of time."). But the Supreme Court in *Buckhannon* rejected the premise that such "but-for" causation is sufficient to confer prevailing party status on a plaintiff. *See Buckhannon*, 532 U.S. at 605 ("A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change. Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties.").

Section 1988 thus does not provide relief for plaintiffs when their actions had no bearing on the intervening Supreme Court result.[3]

---

[3] In a footnote, Plaintiffs also suggest this Court's Ruling and Order makes "this case distinguishable from *Aaron-Brush v. Atty. Gen. State of Alabama*, 678 F. App'x 792, 796 (11th Cir. 2017)." Fee Mot. at 16 n.16. To the extent that opinion is informative, however, it serves only to reinforce the Court's conclusion here. *See Aaron-Brush*, 678 F. App'x at 796 ("The Aaron-Brushes contend that the district court's directives during the status conference constituted a judicially sanctioned change in the parties' relationship within the meaning of *Buckhannon*. Again, these three directives were that the defendants submit a letter confirming that the couple could file taxes jointly, coordinate the couple's trip to the Department of Public Safety for new driver's licenses, and file a notice with the court stating the defendants' intent to comply with *Obergefell* [*v. Hodges*, 135 S. Ct. 2584 (2015)]. In our view, the district court's directives were too informal to satisfy *Buckhannon*'s test . . . . Instead of directing the parties to act or else face the court's enforcement, the district court supplied the parties with suggestions for facilitating the defendants' voluntary compliance. Put another way, the defendants' agreement to comply with *Obergefell*, rather than district court's directives, was the impetus for the parties' resolution of their dispute. Thus, on this record, the Aaron-Brushes have not demonstrated that they benefitted from a judicially sanctioned change in their legal relationship with the defendants such that they must be deemed prevailing parties under § 1988(b).").

Mark Janus, the plaintiff in *Janus*, is currently seeking his own fee award under § 1988(b) in the United States District Court for the Northern District of Illinois.[4] That court will have to determine whether, *inter alia*, *Janus* provides the necessary "judicial imprimatur" to make Mr. Janus a prevailing party. Whatever Mr. Janus and his attorneys may have achieved at the Supreme Court, however, that benefit, if any, is his and his alone.

Plaintiff's second theory overstates the effect of a denial without prejudice, both generally and in this particular case, as a matter of law.

The Court's Ruling and Order simply allows Plaintiffs to return to this Court, without filing a new lawsuit, in the event that a live case or controversy re-emerged. *Lamberty*, 2018 WL 5115559, at *9 ("By denying the motion without prejudice, the Court permits Plaintiffs Carson and Collin Konow the ability to return to federal court if Defendants were to resume their collection of agency fees."). Plaintiffs may move to re-open these proceedings if their reimbursements had not, as they argued for the first time at oral argument in September, been correctly calculated (though in the eleven months since the Court's decision, Plaintiffs have not so moved). *Id.* ("Plaintiffs, for the first time, now argue that their fee reimbursements had not been properly calculated. That issue is not properly before the Court. To the extent that Plaintiffs

---

[4] *See* Joint Motion of Plaintiff Mark Janus and Defendant AFSCME Council 31 to Stay Remaining Deadlines in Local Rule 54-3 and Allow the Parties to Brief Whether Plaintiff is a "Prevailing Party", *Janus v. AFSCME Council 31*, No. 1:15-cv-1235 (N.D. Ill. May 17, 2019) (explaining that the parties have a fundamental disagreement about whether Mr. Janus is a prevailing party). Resolution of that motion is currently stayed pending Mr. Janus's appeal of the district court decision denying him damages for previously-withheld agency fees. Minute Entry, *Janus v. AFSCME Council 31*, No. 1:15-cv-1235 (N.D. Ill. May 28, 2019), ECF No. 200 ("Joint motion of plaintiff Mark Janus and defendant AFSCME Council 31 to stay remaining deadlines in Local Rule 54-3 and allow the parties to brief whether plaintiff is a "prevailing party" 198 is granted in part. Local Rule 54-3 deadlines remain stayed until the appeal in this case is fully adjudicated."); *see also Janus v. AFSCME Council 31*, 2019 WL 1239780, at *3 (N.D. Ill. Mar. 18, 2019) (finding, following the Supreme Court's remand, that Mr. Janus was not entitled to any damages based on agency fees withheld before the Supreme Court's decision in *Janus*, because AFSCME was entitled to a good faith defense), *appeal filed*, No. 19-1553 (7th Cir. Mar. 27, 2019).

can actually demonstrate, with evidence, that the State Police Union still owes them additional fees, they may move to re-open this case for reconsideration of that issue alone.").

Nothing in the Court's Ruling and Order, however, suggests any ongoing enforcement jurisdiction or its equivalent. Unlike a settlement agreement conditioned on court approval, for example, the Ruling and Order does not "effectuate" any obligations between the parties. *Roberson*, 346 F.3d at 83. Rather, it "simply preserve[s] a federal forum in which the parties [can] adjudicate" certain disputes. *Id.*

In other words, the legal relationship between the parties was not materially altered by the October 19, 2018 Ruling and Order of this Court because Plaintiffs no longer have "a concrete interest, however small, in the outcome of the litigation . . . . " *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 307–08 (2012)).

Plaintiffs argue that "the most analogous case" to this one is *Texas v. United States*, 49 F. Supp. 3d 27, 41 (D.D.C. 2014), where the court awarded attorney's fees after "an intervening Supreme Court decision," *Shelby County v. Holder*, 570 U.S. 529 (2013), "likewise rendered the outcome a foregone conclusion." Fee Mot. at 18. But in that case, the defendant-intervenors had achieved a judicially-sanctioned, material alteration in their legal relationship with the state of Texas before the Supreme Court decision in *Shelby County* had been issued.

Indeed, as the court stated there, "Texas does not dispute that this Court's denial of preclearance altered the legal relationship between it and Fee Applicants. Nor does Texas dispute that on June 26, 2013, it repealed the very voting maps for which it had sought preclearance and replaced them with redistricting maps that were substantially similar to the voting districts ordered by the District Court in Texas." *Texas*, 49 F. Supp. 3d at 40–41. As a result, "[a]lthough the Supreme Court ultimately vacated this Court's opinion, neither *Shelby County* nor the vacatur

14

erased the real-world vindication that Fee Applicants had achieved. . . . [and] Defendant–Intervenors did not lose prevailing-party status due to subsequent mootness."). *Id.* at 41 (citations omitted).

Plaintiffs also cite a Second Circuit decision, *Scarangella v. Group Health, Inc.*, 731 F.3d 146 (2d Cir. 2013), which they argue shifted the standard used in determining prevailing party status to whether there was "*judicial involvement* in obtaining relief." Reply at 4. But the Second Circuit in *Scarangella* only addressed whether, under ERISA's different and lower attorney's fee standard—which does not include a prevailing party requirement—the plaintiffs were entitled to fees. *See Scarangella*, 731 F.3d at 151 ("Under ERISA, '[i]n any action under this title ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.' . . . [T]he proper standard for finding a party eligible for attorney's fees in ERISA cases is 'some degree of success on the merits.'") (quoting 29 U.S.C. § 1132(g)(1), and citing *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242 (2010)).

Finally, as noted at oral argument, the Second Circuit recently held that a judgment won by the plaintiff "declaring that Defendants violated [the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc *et seq.*] by denying a [certificate of appropriateness] to Chabad and enjoining [the Litchfield Historic District Commission] to grant Chabad a [certificate of appropriateness] once [the plaintiff] submitted a revised application" made the plaintiff a "prevailing party" under § 1988. *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 2019 WL 3806451, at *3 (2d Cir. Aug. 14, 2019) (published citation pending). As the Second Circuit explained there:

> That judgment, on the day it was entered, was of considerable value to Plaintiff. It not only upheld its legal position that its rights had been violated, but, more important, it greatly enhanced Plaintiff's

15

> bargaining position in whatever further negotiation with HDC Plaintiff might undertake.
>
> As the District Court correctly ruled, it does not matter what happened after judgment was entered. The fact that Chabad did not present a plan conforming to the Court's judgment, thereby triggering HDC's duty to approve that plan, is irrelevant. A person need not claim the winner's prize to be a winner; it need only win the event. Chabad "won" and became a prevailing party when it obtained a beneficial "enforceable judgment."
>
> Defendants' reliance on *Rhodes v. Stewart*, 488 U.S. 1 (1988), is unavailing. "Th[at] case was moot before judgment issued, and the judgment therefore afforded the plaintiffs no relief whatsoever."

*Id.* (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) and *Rhodes*, 488 U.S. at 4).

This Court, however, did not provide Plaintiffs with an enforceable judgment on the merits or court-ordered consent decree. *Buckhannon*, 532 U.S. at 604. It did not retain jurisdiction to enforce a private settlement agreement. *Roberson*, 346 F.3d at 82–84. Nor did it render a settlement operative through the Court's review and approval. *Perez*, 587 F.3d at 152–53. Further, in finding that "there is nothing for this Court to order Defendants to do now," *Lamberty*, 2018 WL 5115559, at *9, the Court did not place its imprimatur on the reimbursements Plaintiffs received. Instead, in finding the case moot, the Court did nothing at all. Thus, "on the day it was entered," *Chabad Lubavitch*, 2019 WL 3806451, at *3, the ruling provided nothing of value to Plaintiffs whatsoever. In the post-*Buckhannon* world, that ruling "is not the stuff of which legal victories are made." *Buckhannon*, 532 U.S. at 605 (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)).

Of course, the dissent in *Buckhannon* expressed concern about the rule established by the Supreme Court there:

> The Court's insistence that there be a document filed in court—a litigated judgment or court-endorsed settlement—upsets long-prevailing Circuit precedent applicable to scores of federal fee-shifting statutes. The decision allows a defendant to escape a

> statutory obligation to pay a plaintiff's counsel fees, even though the suit's merit led the defendant to abandon the fray, to switch rather than fight on, to accord plaintiff sooner rather than later the principal redress sought in the complaint. Concomitantly, the Court's constricted definition of "prevailing party," and consequent rejection of the "catalyst theory," impede access to court for the less well heeled, and shrink the incentive Congress created for the enforcement of federal law by private attorneys general . . . . [T]he "catalyst rule," as applied by the clear majority of Federal Circuits, is a key component of the fee-shifting statutes Congress adopted to advance enforcement of civil rights. Nothing in history, precedent, or plain English warrants the anemic construction of the term "prevailing party" the Court today imposes.

*Buckhannon*, 532 U.S. at 622–23 (Ginsburg, J., dissenting).

But the Supreme Court's interpretation of federal statutes binds lower courts unless and until either the Supreme Court overrules itself, or Congress amends the statute. *See, e.g.*, *Balintulo v. Daimler AG*, 727 F.3d 174, 189–90 (2d Cir. 2013) ("The Supreme Court expressly held that claims under the [Alien Tort Statute, 28 U.S.C. § 1350] cannot be brought for violations of the law of nations occurring within the territory of a sovereign other than the United States . . . . Lower courts are bound by that rule and they are without authority to 'reinterpret' the Court's binding precedent in light of irrelevant factual distinctions, such as the citizenship of the defendants.") (citations omitted).

Accordingly, Plaintiffs are not prevailing parties under § 1988 and therefore are not entitled to attorney's fees.

## IV. CONCLUSION

For the reasons explained above, the Court **DENIES** Plaintiffs' motion for attorney's fees and costs.

**SO ORDERED** at Bridgeport, Connecticut, this 6th day of September, 2019.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge