**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MARC LAMBERTY, JOSEPH MERCER, CARSON KONOW, and COLLIN KONOW, *Plaintiffs*, <br><br> v. <br><br> CONNECTICUT STATE POLICE UNION, KEVIN LEMBO, *Comptroller, State of Connecticut*, MELISSA McCAW, *Secretary of Office of Policy and Management, State of Connecticut*, and SANDRA FAE BROWN-BREWTON, *Undersecretary of Labor Relations for the Office of Labor Relations, State of Connecticut*, *Defendants*. | No. 3:15-cv-00378 (VAB) |

**RULING AND ORDER ON MOTIONS**

Current and former Connecticut state troopers Marc Lamberty, Joseph Mercer, Carson Konow, and Collin Konow ("Plaintiffs") sued the Connecticut State Police Union (the "State Police Union" or "Union"), Kevin Lembo, Benjamin Barnes, Lisa Grasso Egan,[1] and Sandra Fae Brown-Brewton (collectively, the "State Defendants," and together with the State Police Union, "Defendants"). Compl., ECF No. 1 (Mar. 14, 2015). Plaintiffs alleged that Defendants injured them by deducting "agency fees" from their pay without providing pre-collection notice and procedural safeguards that had been, at that time, articulated by the United States Supreme Court,

---

[1] On October 19, 2018, the Court ordered that, as Lisa Grasso Egan had become a judge in the Bridgeport Judicial District, the caption be amended to reflect that Judge Grasso Egan's name be struck from the docket and that Ms. Brown-Brewton be named as a defendant in her official capacity. *See* Order, ECF No. 181 (Oct. 19, 2018). On September 6, 2019, the Court ordered that the caption be further amended to reflect that Melissa McCaw be automatically substituted for Benjamin Barnes. *See* Order to Am. Case Caption, ECF No. 201 (Sept. 6, 2019). The terms "State Defendants" and "Defendants" therefore also refer to Ms. McCaw and Ms. Brown-Brewton.

in violation of their rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. *Id.*

On June 27, 2018, the U.S. Supreme Court decided *Janus v. AFSCME*, overturning *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977) and holding that any state withholding of fair share fees from public employees covered by collective bargaining agreements was impermissible under the First Amendment. *See Janus v. AFSCME*, 138 S. Ct. 2448 (2018).

On August 9, 2018, Plaintiffs moved for summary judgment, arguing that there was no longer any dispute of material fact in light of the holding in *Janus*. Pls.' Mot. for Summ. J., ECF No. 162 (Aug. 9, 2018) ("Pls.' MSJ"). On August 30, 2018, the State Defendants and State Police Union filed separate oppositions to Plaintiffs' summary judgment motion, both arguing that the case should be dismissed as moot. *See* State Defs.' Mem. of L. in Opp'n to Mot. for Summ. J., ECF No. 170 (Aug. 30, 2018) ("State Defs.' MSJ Opp'n"); Obj. to Mot. for Summ. J., ECF No. 171 (Aug. 30, 2018) ("Union MSJ Opp'n").

On October 19, 2018, the Court concluded that because *Janus* had resolved the question of whether public sector unions could collect agency fees, and Defendants did not dispute that the law of the land had changed and ended their collection of agency fees, and agreed to return all of the agency fees owed to the Plaintiffs, all of Plaintiffs' claims were moot. Ruling and Order on Mot. for Summ. J., ECF No. 182 (Oct. 19, 2018) ("SJ Order"). The Court therefore denied Plaintiffs' motion for summary judgment without prejudice to renewal in the event there is an effort to reintroduce agency fees and to the extent Plaintiffs were not adequately reimbursed for past agency fees already imposed. *Id.* at 3. The Court also permitted Plaintiffs to file a post-judgment motion for attorneys' fees and costs. *Id.*

On November 16, 2018, Plaintiffs moved for attorneys' fees and expenses on the ground that they were a "prevailing party" under 42 U.S.C. § 1988. Pls.' Petition for Attys' Fees and Expenses Pursuant to 42 U.S.C. § 1988, ECF No. 183 (Nov. 16, 2018) ("Fee Mot."). On May 30 and 31, 2019, both sets of Defendants opposed the motion. *See* State Defs.' Mem. of L. in Opp'n to Fee Mot., ECF No. 195 (May 30, 2019) ("State Defs.' Fee Obj."); State Police Union's Obj. to Fee Mot., ECF No. 196 (May 31, 2019) ("Union Fee Obj."). On September 6, 2019, the Court denied the motion, finding Plaintiffs were not prevailing parties under § 1988. Ruling on Mot. for Atty's Fees and Expenses, ECF No. 202 (Sept. 6, 2019) ("Fee Order").

On September 13, 2019, Plaintiffs moved for reconsideration of the Court's order denying their motion for attorneys' fees and expenses. Pls.' Mot. for Reconsideration of the Ct.'s Order (ECF No. 202) Denying Their Petition for Attys' Fees and Expenses, ECF No. 203 (Sept. 13, 2019); Pls.' Mem. of L. in Supp. of Their Mot. for Reconsideration of the Ct.'s Order (ECF No. 202) Denying Their Petition for Attys' Fees and Expenses, ECF No. 203-1 (Sept. 13, 2019) ("Mot. for Reconsideration"). Both the State Police Union and the State Defendants objected to the motion. *See* Def., Conn. State Police Union, Obj. to Pls.' Mot. for Reconsideration, ECF No. 204 (Sept. 20, 2019) ("Union Obj. Reconsideration"); State Defs.' Mem. of L. in Opp'n to Pls.' Mot. for Reconsideration, ECF No. 205 (Sept. 23, 2019) ("State Defs.' Obj. Reconsideration").

On October 4, 2019, Plaintiffs appealed the Court's orders denying their motions for summary judgment and for attorneys' fees and expenses. *See* Notice of Appeal, ECF No. 206 (Oct. 4, 2019).

On October 1, 2020, the Second Circuit dismissed Plaintiffs' appeal for lack of jurisdiction, finding that "no final, appealable judgment [had been] entered in the district court." *Lamberty v.*

*Conn. State Police Union*, 828 F. App'x 49, 51 (2d Cir. 2020). The Second Circuit therefore remanded the case to this Court for further proceedings. *Id.* at 51-52.

On remand, the State Defendants and the State Police Union now move to dismiss the case. *See* Mot. to Dismiss on Remand, ECF No. 216 (Oct. 29, 2020) ("State Defs.' MTD"); Def. CSPU's Mot. to Dismiss and to Enter J. Against Pls., ECF No. 226 (Jan. 15, 2021); Mem. of L. in Supp. of Def. CSPU's Mot. to Dismiss and to Enter J. Against Pls., ECF No. 226-1 (Jan. 15, 2021) ("Union MTD"). Plaintiffs oppose both motions to dismiss. *See* Pls.' Mem. in Opp'n to State Defs.' Mot. to Dismiss on Remand, ECF No. 217 (Nov. 17, 2020) ("Pls.' Opp'n State Defs.' MTD"); Pls.' Opp'n to Def. CSPU's Mot. to Dismiss and Enter J. Against Pls. on Remand (ECF No. 226); Resp. to State Defs.' Suppl. Brief (ECF No. 225), ECF No. 227 (Feb. 5, 2021) ("Pls.' Opp'n Union MTD").

For the reasons explained below, the Court **GRANTS** the State Defendants' and State Police Union's motions to dismiss.

The Court also **DENIES** Plaintiffs' motions for reconsideration and to modify their request for attorneys' fees to include additional fees incurred since last filing.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Familiarity with the facts and prior proceedings, as detailed in the Court's October 19, 2018 Ruling and Order, is assumed.[2] *See* SJ Order.

---

[2] In relevant part, the pre-2018 filings referred to in this opinion include the Answer of Defendant Connecticut State Police Union to the First Amended Complaint, ECF No. 32 (June 1, 2015) ("Union Answer I"); Answer of Defendant Connecticut State Police Union to the Second Amended Complaint, ECF No. 61 (Apr. 20, 2016) ("Union Answer II"); and the State Defendants' Answer to the Second Amended Complaint, ECF No. 62 (Apr. 29, 2016) ("State Defs.' Answer").

On August 9, 2018, Plaintiffs moved for summary judgment, arguing that there was no longer any dispute of material fact in light of the holding of *Janus*. *See* Pls.' MSJ. At that time, Plaintiffs also requested relief in the form of an award of costs and attorney's fees. *See id.* at 8–10.

On August 21, 2018, the State Police Union filed a status report informing the Court that it had, after *Janus*, "reimbursed the individual Plaintiffs for the entirety of their individual monetary demands (dues/fees that had been withheld plus claimed interest)" and requested a status conference with the Court to discuss the pending motion. *See* Status Report, ECF No. 165 (Aug. 21, 2018).

On August 29, 2018, the Court held a telephonic status conference with the parties. Min. Entry, ECF No. 169 (Aug. 29, 2018). During that call, Plaintiffs did not challenge the sufficiency of the reimbursements, but instead suggested other remaining injunctive relief rendered the case not moot. SJ Order at 6.

On August 30, 2018, the State Defendants and the State Police Union opposed summary judgment, arguing that all of Plaintiffs' claims were moot. State Defs.' MSJ Opp'n; Union MSJ Opp'n. Specifically, State Defendants argued that "any relief available to Plaintiffs was rendered moot in light of (1) the holding of *Janus*; (2) the State Defendants' decision to cease collection of all fair share fees post-*Janus*; and (3) the State Police Union's reimbursement of all previously-withheld fair share fees, plus interest, to Plaintiffs." SJ Order at 6 (citing State Defs.' MSJ Opp'n at 2-4). The State Police Union argued that because the collective bargaining agreement at issue expired on June 30, 2018, the challenge to the indemnification provision was moot, and also included in its opposition papers images of reimbursement checks it claims it sent to Plaintiffs. *Id.* at 7 (citing Check Images, Ex. A to Union MSJ Opp'n, ECF No. 171-1 (Aug. 20, 2018)).

On October 19, 2018, the Court denied Plaintiffs' motion for summary judgment, holding that all of Plaintiffs' claims had become moot. *See* SJ Order at 18 ("In the end, there is nothing for this Court to order Defendants to do now."). The Court held that the State Police Union's reimbursement of their previously-withheld agency fees, plus interest, mooted Mr. Lamberty's and Mr. Mercer's claims. *See id.* at 13-14 ("Mr. Lamberty retired from state service shortly after this lawsuit began, on April 1, 2015, and Mr. Mercer retired on January 1, 2017 . . . . Their injury is their claim for the agency fees that had previously been withheld during their employment. But that injury appears to have been addressed in its entirety when the Union reimbursed Mr. Lamberty and Mr. Mercer for their previously-withheld fees, plus interest."). The Court also found that Carson and Collin Konow's claims for retrospective relief similarly were mooted by the State Police Union's reimbursement of their previously-withheld agency fees, plus interest, while their claims for declaratory and injunctive relief were mooted by the Supreme Court's broad, unequivocal holding in *Janus* invalidating all state laws requiring the withholding of agency fees from nonconsenting employees, and the State Defendants' immediate compliance with that holding. *Id.* at 16-19.

The Court's denial was without prejudice to renewal in the event there was an effort to re-introduce agency fees, and to the extent the Plaintiffs had not been adequately reimbursed for past agency fees already imposed. *Id.* at 18-19 ("By denying the motion without prejudice, the Court permits Plaintiffs Carson and Collin Konow the ability to return to federal court if Defendants were to resume their collection of agency fees. . . . To the extent that Plaintiffs can actually demonstrate, with evidence, that the State Police Union still owes them additional fees, they may move to re-open this case for reconsideration of that issue alone."). The Court accordingly directed the Clerk of the Court to administratively close the case. *Id.* at 19. The Court

also held that, to the extent that Plaintiffs believed they were "prevailing parties" within the meaning of 42 U.S.C. § 1988, they were required to file a motion with the appropriate supporting documentation, consistent with Second Circuit law, by November 16, 2018. *Id.*

On November 16, 2018, Plaintiffs moved for an award of attorney's fees and costs under 42 U.S.C. § 1988. Fee Mot.

On November 19, 2018, the Court referred the parties to United States Magistrate Judge Holly B. Fitzsimmons to determine whether the fee motion could be resolved without further litigation. Order Referring Case, ECF No. 185 (Nov. 19, 2018).

On April 10, 2019, after a period of delay and a stay of the briefing schedule for the motion, the Court set new deadlines for the State Defendants and the State Police Union to respond to the motion. Scheduling Order, ECF No. 194 (Apr. 10, 2019).

On May 30, 2019, the State Defendants opposed the motion for attorneys' fees and expenses. State Defs.' Fee Obj.

On May 31, 2019, the State Police Union opposed the motion. Union Fee Obj.

On June 20, 2019, Plaintiffs filed a reply in support of the motion. Pls.' Mem. Replying to Defs.' Opp'ns to Their Petition for Attys' Fees and Expenses Pursuant to 42 U.S.C. § 1998, ECF No. 197 (June 20, 2019) ("Fee Reply").

On September 6, 2019, the Court denied Plaintiffs' motion for attorneys' fees and expenses, finding that Plaintiffs were not prevailing parties under § 1988. *See* Fee Order.

On September 13, 2019, Plaintiffs moved for reconsideration of the Court's denial of their motion for attorneys' fees. Mot. for Reconsideration.

On September 20, 2019, the State Police Union objected to the motion for reconsideration. Union Obj. Reconsideration.

On September 23, 2019, the State Defendants objected to the motion for reconsideration. State Defs.' Obj. Reconsideration.

On October 4, 2019, Plaintiffs appealed the Court's denial of summary judgment and denial of their motion for attorneys' fees to the Second Circuit. Notice of Appeal.

On October 1, 2020, the Second Circuit dismissed the appeal for lack of jurisdiction and remanded the case to this Court. *See Lamberty*, 828 F. App'x 49.

On October 29, 2020, the State Defendants moved to dismiss the action on remand. State Defs.' MTD.

On November 17, 2020, Plaintiffs opposed the State Defendants' motion to dismiss. Pls.' Opp'n State Defs.' MTD.

On November 20, 2020, the State Police Union moved for a telephonic status conference with the Court. Mot. for Telephonic Status Conf., ECF No. 219 (Nov. 20, 2020). On November 22, 2020, the Court granted the motion and scheduled a status conference for December 3, 2020. Order, ECF No. 220 (Nov. 22, 2020).

On December 1, 2020, the State Defendants filed a reply to Plaintiffs' opposition to their motion to dismiss the action on remand. Reply Br. in Supp. of Mot. to Dismiss on Remand, ECF No. 222 (Dec. 1, 2020) ("State Defs.' MTD Reply").

On December 3, 2020, the Court held a telephonic status conference with the parties. Min. Entry, ECF No. 223 (Dec. 3, 2020). That same day, the Court issued an order providing the State Police Union until January 15, 2021 to file its motion to dismiss, and all parties until January 15, 2021 to file briefing on any jurisdictional issues pertaining to the pending motion for reconsideration. Order, ECF No. 224 (Dec. 3, 2020).

On January 14, 2021, the State Defendants filed a supplemental brief. State Defs.' Suppl. Br. Pursuant to the Ct.'s Dec. 3, 2020 Order, ECF No. 225 (Jan. 14, 2021) ("State Defs.' Suppl. Br.").

On January 15, 2021, the State Police Union moved to dismiss the action on remand. Union MTD.

On February 5, 2021, Plaintiffs opposed the State Police Union's motion to dismiss and replied to the State Defendants' supplemental brief. Pls.' Opp'n Union MTD.

On February 18, 2021, the State Defendants filed a reply to Plaintiffs' opposition to their motion to dismiss and supplemental brief. State Defs.' Reply Br. in Supp. of Their Suppl. Br., ECF No. 228 (Feb. 18, 2021) ("State Defs.' Suppl. Reply").

On February 19, 2021, the State Police Union replied to Plaintiffs' opposition to their motion to dismiss. Reply in Supp. of Def. CSPU's Mot. to Dismiss and to Enter J. Against Pls., ECF No. 229 (Feb. 19, 2021) ("Union MTD Reply").

On March 11, 2021, Plaintiffs filed a supplemental memorandum in opposition to the motions to dismiss. Pls.' Submission of Suppl. Auth. in Opp'n to Defs.' Mot. to Dismiss on Remand, ECF No. 234 (Mar. 11, 2021) ("Pls.' Suppl. Opp'n").

On March 17, 2021, the Court held oral argument on the motions to dismiss and the motion for reconsideration by videoconference. Min. Entry, ECF No. 236 (Mar. 18, 2021). During oral argument, Plaintiffs moved to modify their request for attorneys' fees to include additional fees incurred since last filing. Oral Mot., ECF No. 237 (Mar. 17, 2021).

## II.    STANDARD OF REVIEW

### A.  Motion to Dismiss

In every case, a court must determine whether it has subject matter jurisdiction. In evaluating a motion under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, the Court "must accept as true all material factual allegations in the complaint," but need not draw inferences favorable to the party asserting jurisdiction. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). A case is properly dismissed under Rule 12(b)(1) where the district court "lacks the statutory or constitutional power to adjudicate the case." *Morrison v. Nat'l Austl. Bank. Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

The burden to prove subject matter jurisdiction generally falls on the plaintiff, but where a "defendant official or government entity asserts the Eleventh Amendment as the basis of the 12(b)(1) motion, the burden falls to that entity to prove its entitlement to dismissal on the grounds of immunity from suit." *Pawlow v. Dep't of Emergency Servs. & Pub. Prot.*, 172 F. Supp. 3d 568, 573 (D. Conn. 2016) (internal quotation marks omitted) (citing *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 239 (2d Cir. 2006)).

Mootness also is a threshold issue that courts must address when changes in circumstances occur that may moot a case. *See United States v. Juvenile Male*, 564 U.S. 932, 935-36 (2011). This review is required because "Article III, Section 2 of the Constitution limits the jurisdiction of the federal courts to the resolution of cases and controversies." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (internal quotation marks omitted); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) ("In our system of government, courts have 'no business' deciding legal disputes or expounding on law in the absence of . . . a case or controversy [under Article III, Section 2]." (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)); *Genesis*

*Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013)); *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) ("The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which exercise of judicial power depends upon the existence of a case or controversy." (internal quotation marks omitted)). "When a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Fox v. Bd. of Tr. of the State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (internal quotation marks omitted).

A case becomes moot when there is no longer an ongoing injury that can be redressed through judicial action because the "issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already*, 568 U.S. at 91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id.* (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)). Thus, "[i]f an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare*, 569 U.S. at 72 (quoting *Lewis v. Cont. Bank Corp.*, 494 U.S. 472, 477–78 (1990)).

However, "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Knox v. Serv. Empls. Int'l Union*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted) (finding that union's offer to refund past fees plus interest to class members did not moot case where a controversy remained as to the adequacy of union's refund notice). "'As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox*, 567 U.S. at 307–08).

11

It is well-settled that significant changes in law are one type of intervening circumstance that can moot a claim or case. *See Bigelow v. Virginia*, 421 U.S. 809, 817-18 (1975) (affirming finding that statutory amendment mooted the issue of overbreadth, as amendment effectively repealed its prior application such that there was no possibility that its previous form would be applied again to the appellant or chill rights of others); *Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 377–79 (2d Cir. 2004) (affirming finding that certain claims directed at town ordinance were rendered moot through amendments); *Granite State v. Town of Orange, Conn.*, 303 F.3d 450, 451–52 (2d Cir. 2002) (per curiam) (affirming denial of injunctive relief as moot where town "completely revised its regulations through proper procedures" and had no "intention of returning to the prior regulatory regime").

It is also well-settled that where a defendant's "voluntary cessation" of injury-causing conduct is alleged to have mooted a case, the case is not automatically deemed moot; rather, the defendant must show that the conduct is unlikely to reoccur with respect to the plaintiffs before the court. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (declining to find case moot where city's repeal of objectionable language would not preclude it from reenacting precisely the same provision in the future if district court judgment was vacated as moot, and where city had announced its intention to do so); *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 ("voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case" where defendant "is free to return to his old ways").

The defendant bears a "heavy" burden in such cases and must show that "there is no reasonable expectation that the wrong will be repeated." *Id.* at 633; *see also Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) ("The heavy burden of persuading the court that the challenged [voluntarily ceased] conduct cannot reasonably be expected to start up again

lies with the party asserting mootness." (internal quotation marks and alteration omitted)). This requirement ensures that defendants cannot simply insulate themselves from binding judicial review of conduct that is likely to reoccur. *Id.* at 632 ("The courts have rightly refused to grant defendants such a powerful weapon against public law enforcement."); *United States v. Oreg. State Med. Soc.*, 343 U.S. 326, 333 (1952) ("When defendants are shown to have settled into a continuing practice . . ., courts will not assume that it has been abandoned without clear proof. It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." (internal citations omitted)).

Finally, while the Supreme Court has held that an unaccepted offer of settlement that has expired, such as a Rule 68 offer, does not moot a case, it also has indicated that that, in individual actions, a defendant's decision to fully pay plaintiffs the amount in controversy, and plaintiffs' acceptance of those payments, will extinguish those monetary claims. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162-66 (2016) (contrasting unaccepted Rule 68 offer cases with earlier cases where the Court found actual tender of full amounts in controversy to plaintiffs had mooted claims for actual damages).

### B.  Motion for Reconsideration

Rule 59(e) of the Federal Rules of Civil Procedure allows a party to move to "alter or amend a judgment . . . no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Courts consider a motion made under Rule 59(e) to be a motion for reconsideration. *See Krohn v. N.Y.C. Police Dep't*, 341 F.3d 177, 179 (2d Cir. 2003) (noting that a party timely filed for reconsideration under Fed R. Civ. P. 59(e) and 60(b)).

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc*., 70 F.3d 255, 257 (2d Cir. 1995); *see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd*., 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (internal quotation marks omitted)). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader,* 70 F.3d at 257.

Under Rule 60(b), the Court may relieve a party from a final judgment, order, or proceeding for, *inter alia*, "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1); "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," Fed. R. Civ. P. 60(b)(2); or "fraud . . ., misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3). "The decision whether to grant a party's Rule 60(b) motion is committed to the sound discretion of the district court." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (internal quotation marks omitted).

Rule 60(b) provides extraordinary relief, and a motion under Rule 60 should be granted only if the moving party demonstrates "exceptional circumstances." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1993); *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009) (Rule 60(b) provides "a mechanism for extraordinary judicial relief [available] only if the moving party demonstrates exceptional circumstances, and relief under the rule is discretionary.") (alteration in original)). The Court, however, may assess a *pro se* party's motion

under Rule 60(b) using "a lesser standard than [a motion] drafted by lawyers," as it would assess any *pro se* pleading. *Matura v. United States*, 189 F.R.D. 86, 89 (S.D.N.Y. 1999).

"A motion for reconsideration is committed to the sound discretion of the court." *Nygren v. Greater N.Y. Mut. Ins. Co.*, No. 3:07-cv-462 (DJS), 2010 WL 3023892, at *2 (D. Conn. Aug. 2, 2010); *see also Lesch v. United States*, 372 F. App'x 182, 182 (2d Cir. 2010) ("The standard of review of a district court order granting or denying a motion for [reconsideration under both Rule 59(e) and Rule 60(b)] is whether the order constituted an abuse of discretion." (citing *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999))).

## III.   DISCUSSION

The State Defendants and the Union both move to dismiss the case. State Defs.' MTD; Union MTD. Plaintiffs move for reconsideration of the Court's order denying attorneys' fees and expenses. Mot. for Reconsideration.

The Court addresses the motions in turn.

### A.  Defendants' Motions to Dismiss

The State Defendants move to dismiss on mootness grounds. State Defs.' MTD at 2-4. As they argue, "[t]he case is unquestionably moot, consistent with th[e] Court's decision denying [P]laintiffs' motion for summary judgment," which in the State Defendants' view contemplated further proceedings only in the event that "unforeseen circumstances" occurred, such as "the hypothetical and speculative event of [D]efendants' resuming the collection of agency fees or inadequate reimbursement of past fees." *Id.* at 2. The State Defendants also argue that the "case is moot as to [P]laintiffs' request for a declaratory judgment" because "[t]hat request was fully briefed, argued and decided by this Court" and the Supreme Court's decision in *Janus* "effectively

constituted and substituted for the declaratory judgment [P]laintiffs were seeking and invalidated" Connecticut General Statutes § 5-280, the state statute authorizing agency fees. *Id.* at 3.

The State Defendants also argue that Plaintiffs' claims against the State Defendants, for both liability and attorneys' fees and expenses, are barred by (1) the Eleventh Amendment, *see* State Defs.' Suppl. Br. at 3-5; and (2) qualified immunity, *see id.* at 4-5; and also argue that Plaintiffs' claims against the Union are barred by good faith immunity as articulated in the Second Circuit's decision in *Wholean v. CSEA SEIU Local 2001*, 955 F.3d 332 (2d Cir. 2020), *cert. petition pending*, U.S. Dkt. No. 20-605, *see* State Defs.' Suppl. Br. at 4-5.

The State Police Union, for its part, argues that the "Court should adhere to its previous determination that all of Plaintiffs' claims are moot," including their claims for damages and their claims seeking declaratory and injunctive relief. Union MTD at 7. As the Union argues, dismissal is warranted because post-*Janus*, courts have "consistently held that similar cases are moot, and dismissed them as such." *Id.* at 7; *id.* at 8-11 (collecting cases). The Union also argues that "Plaintiffs make no claim that Defendants are causing them harm by continuing to engage in conduct that violates *Janus*," and there is therefore "no reason to believe that Defendants will change their conduct" in this way. *Id.* at 11.

The Union also argues that the Court "lacks jurisdiction over Plaintiffs' request for a declaratory judgment invalidating the Connecticut statute because there is no ongoing violation of federal law," *id.* at 12-13, as well as that Plaintiffs' claims warrant dismissal under the good faith defense as articulated in the Second Circuit's decision in *Wholean*, *id.* at 13-14.

Plaintiffs argue that entry of judgment is not appropriate at this time because (1) their motion for reconsideration remains pending and (2) the Plaintiffs anticipate the filing of a supplemental fee petition. Pls.' Opp'n State Defs.' MTD at 1-2 (also requesting that the Court

exercise its discretion under Federal Rule of Civil Procedure 58 to extend the time for filing a notice of appeal until thirty (30) days after final disposition of a timely-filed supplemental petition for attorneys' fees and expenses).

Plaintiffs also raise several arguments as to why their claims are not moot, including that (1) *Janus* does not moot the case, but rather "governs [its] adjudication," *id.* at 3; (2) Defendants' voluntarily cessation does not moot the case because Defendants remain free to resume their challenged activity, particularly as the Connecticut statute authorizing agency fees remains on the books, *id.* at 4-8; (3) the case remains live because the Plaintiffs seek declaratory relief, *id.* at 8-9; and (4) the case remains live because Defendants did not give Plaintiffs all that they sought with their lawsuit, *id.* at 9-10. With respect to the arguments raised by the Union, Plaintiffs argue that the cases relied upon there are "distinct procedurally and factually," Pls.' Opp'n Union MTD at 2, and that the refunds made by the Union were not made "voluntarily," but instead made under a "negotiated settlement between the parties," *id.* at 4-5.

Finally, Plaintiffs argue that the State Defendants' and the Union's efforts to raise Eleventh Amendment and good faith immunity defenses were "long ago waived." *Id.* at 5-8.

The Court addresses each argument in turn.

## 1. Mootness Given *Janus* and Defendants' Post-*Janus* Actions

In denying Plaintiffs' motion for summary judgment, the Court concluded that the case was moot because "Plaintiffs no longer possess a legally cognizable interest in the outcome of this litigation." SJ Order at 11. As the Court described, after the Supreme Court's decision in *Janus*, Defendants took a number of responsive steps, including issuing notice that the state would "immediately discontinue the collection of agency service fees from non-union members"; announcing that new procedures to agencies would be introduced in light of *Janus*; publicly stating

that withholding of agency fees would end effective with July 2018 paychecks; and issuing legal guidance on implementation of *Janus*. *Id.* at 5-6. The Court also observed that Plaintiffs did not dispute that Union reimbursements of past agency fees occurred, or continue to assert a claim for actual damages, though the Court noted in a footnote that Plaintiffs claimed at oral argument that the fees may not have been properly calculated and invited Plaintiffs to reopen the case on that issue alone should they maintain the Union owed them additional fees. *Id.* at 11 & n.2.

After discussing the relevant law, including that "Plaintiffs must show that they continue to possess legally cognizable interests in spite of the change in circumstances that is claimed to have mooted the case," *id.* at 12 (citing *Already*, 568 U.S. at 100), and Plaintiffs "must show that they have suffered, are suffering, or will be threatened with an injury in fact that is fairly traceable to the defendant's conduct and is likely to be redressed through judicial action," *id.* (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)), the Court addressed "whether each of the alleged injuries continue[d] to exist in light of the relevant change in circumstances," namely, *Janus* and Defendants' subsequent actions under *Janus*, for each set of Plaintiffs, *id.* at 13.

The Court concluded that the claims of retired Plaintiffs Mr. Lamberty and Mr. Mercer were moot for several reasons, including that because "[h]aving retired," they would not be "subject to the collection of any agency fees in the future" and that their past injury "appears to have been addressed in its entirety when the Union reimbursed" their agency fees. *Id.* at 13-14. The Court also concluded that the claims of currently employed Plaintiffs Carson and Collin Konow were moot given the Supreme Court's holding in *Janus*, as "there is no longer a legal dispute as to whether public sector unions can collect agency fees" and "none of the Defendants in this case are disputing that the law of the land has changed, or are trying to collect agency fees." *Id.* at 17.

The Court, however, also observed that "there is nothing for this Court to order Defendants to do now," and denied the motion without prejudice. *Id.* at 18. It did so for two reasons: first, to "permit[] Plaintiffs Carson and Collin Konow the ability to return to federal court if Defendants were to resume their collection of agency fees," and second, to allow Plaintiffs to "move to re-open this case for reconsideration of" the calculation of fee reimbursements, provided that "Plaintiffs can actually demonstrate, with evidence, that the State Police Union still owes them additional fees." *Id.* at 18-19.

Plaintiffs do not allege that either event has occurred here: that Defendants have resumed their collection of agency fees or that the calculation of fee reimbursements was erroneous. Instead, Plaintiffs seek to relitigate the question of mootness, setting forth arguments each of which was considered and addressed by the Court in its order denying summary judgment.

First, Plaintiffs argue that the Court "apparently failed to notice that [in] each and every one" of the cases it cited for the principle that significant changes in law can moot a claim, a "statutory or regulatory regime" was "repealed or expired by its own terms." Pls.' Opp'n State Defs.' MTD at 5-6. In Plaintiffs' view, there is "nothing more than the representations of temporary public office holders" keeping Defendants from running afoul of *Janus*'s holding. *Id.* at 6.

The Court, however, thoroughly addressed this issue in its order denying summary judgment. The Court noted and described the "voluntary cessation" exception, and cited defendants' "heavy burden" in these cases. SJ Order at 9-11. The Court then evaluated Plaintiffs' argument that "the Court must assess this as an instance of voluntary cessation," but concluded that "there was nothing voluntary about" Defendants' decision to "end[] their collection of agency fees." *Id.* at 17. Instead, the Court observed that Defendants "complied with *Janus* . . . not because they wanted to evade the Court's jurisdiction, as is the case in so many voluntary cessation cases,"

but because of the "new and controlling precedent" announced in *Janus*. *Id.* Plaintiffs have set

forth insufficient support for their present claim that this conclusion was incorrect or that the

Court's careful examination of its cited cases bears the opposite conclusion. Even if true that

settlement informed the calculation of agency fees repaid to Plaintiffs, as Plaintiffs suggest, *see*

Pls.' Opp'n Union MTD at 4-5, this does not render incorrect the Court's conclusion that *Janus*

not only informed, but bound, Defendants' decision to refrain from future collection of agency

fees as *Janus* requires.

    The Court also at summary judgment thoroughly considered Plaintiffs' current claim that

the case is not moot because they "continue to seek [other] remedies," including (1) "a declaratory

judgment that Connecticut's agency fee statute is unconstitutional under *Janus*; (2) an injunction

preventing the State Defendants from enforcing the agency fee statute; and (3) an injunction

against the indemnification clause in the Union's collective bargaining agreement with the State."

SJ Order at 11-12. As the Court observed in denying all of Plaintiffs' claims at the summary

judgment stage, *Janus* "announced a broad rule invalidating every state law permitting agency fees

to be withheld," meaning that there is "no longer a legal dispute as to whether public sector unions

can collect agency fees. They cannot." *Id.* at 17.

    To the extent the Court's decision at summary judgment was unclear, the Court now

explicitly finds that all of Plaintiffs' claims, including their claims for declaratory and injunctive

relief, are moot in light of *Janus*. Indeed, as the Court observed at summary judgment, several

cases to have considered this question post-*Janus* have concluded that repeal of state agency-fee

statutes is not required to render a case moot. *See, e.g.*, *Yohn v. California Teachers Ass'n*, No.

SACV 17-202-JLS-DFM, 2018 WL 5264076, at *4 (C.D. Cal. Sept. 28, 2018) ("While a statutory

change would certainly render this case moot, a policy change can as well, depending on whether

the challenged conduct can be reasonably expected to recur. Accordingly, because the challenged conduct of collecting agency fees cannot reasonably be expected to recur, the case is moot." (internal quotation marks and citations omitted)); *Danielson v. Inslee*, 345 F. Supp. 3d 1336, 1340 (W.D. Wash. 2018), *aff'd*, 945 F.3d 1096 (9th Cir. 2019) ("Although policy changes are unlike statutory changes, because a statutory change is usually enough to render a case moot, policy changes may—or may not—render a case moot, depending on whether the challenged [conduct] can be reasonably expected to recur." (internal quotation marks, citations and alterations omitted)); *Gabriele v. Serv. Empls. Int'l Union, Local 1000*, 466 F. Supp. 3d 1095, 1098-99 (E.D. Cal. 2020) (denying claims for declaratory and injunctive relief as moot, finding that "the repeal of the California statutes [authorizing the deduction of agency fees] is not a requirement for this court to declare this case moot" (citing *Hamidi v. Serv. Emps. Int'l Union Local 1000*, 386 F. Supp. 3d 1289, 1297 (E.D. Cal. 2019) ("The mere presence on the statute books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue.")); *Seidemann v. Prof. Staff Congress Local 2334*, 432 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) (observing that precedent cited by plaintiffs there "did not hold . . . that a case remains live so long as the legislature retains a problematic statute on the books. As has already been noted [in that case] and by numerous other district courts, *Janus* fundamentally changed the law of the land, and by virtue of the Supremacy Clause, *Janus* broad holding preempts any state law to the contrary." (citing, *inter alia*, U.S. Const. art. VI; *Cooper v. Aaron*, 358 U.S. 1, 18 (1958)) (other internal citations omitted)).[3]

---

[3] Though Plaintiff argues that cases such as *Seidemann*, cited by Defendants, are "distinct procedurally and factually" in part because these actions were in some cases filed after *Janus* was decided, Pls.' Opp'n to Union MTD at 2 & n.1, Plaintiffs do not explain sufficiently why this renders these cases' holdings inapplicable to the Court's decision here, particularly as Defendants have taken many steps to reiterate that they will not continue to collect agency fees as prohibited by *Janus*.

The cases now relied upon by Plaintiffs for this argument—particularly *Teachers Local No. 1 v. Hudson*, 475 U.S. 292 (1986) and *Knox v. Serv. Empl. Int'l Union, Local 1000*, 567 U.S. 298 (2012)—do not require the opposite conclusion. *See* Pls.' Obj. State Defs' MTD at 6-8. In these cases, which primarily discuss mootness through general recitation of the "voluntary cessation" doctrine, defendants' changed conduct was due not to intervening law or policy, but rather, as Plaintiffs concede, attributable to them "being hailed into court." Pls.' Opp'n State Defs.' MTD at 6; *see, e.g., Hudson*, 475 U.S. at 305 n. 14 (noting the "voluntary cessation" doctrine's applicability where a defendant union had changed its procedures to cure alleged defects after being sued in federal court); *Knox*, 567 U.S. at 307 (declining to find case as moot where the defendant union had, after a petition for *certiorari* was filed, sent a notice offering a full refund to all union members, and observing that "[s]uch postcertiorari maneuvers designed to insulate a decision from review by this Court must be viewed with a critical eye"). Similarly, in *City of Mesquite*, also relied upon by Plaintiffs, the Supreme Court declined to find a case as moot where a certain provision of an ordinance had been repealed, finding that it would be possible even after the city's repeal for the city to reenact "precisely the same provision if the District Court's judgment were vacated." 455 U.S. at 289.

Here, however, as the Court observed at summary judgment, Defendants' multiple post-*Janus* actions aimed at ceasing agency fee collection policies were motivated not by voluntary choice, but rather "[i]n response" to *Janus*'s "revers[al] [of] decades of precedent." SJ Order at 17. And, given *Janus*'s controlling precedent, it would, unlike *City of Mesquite*, not now be possible for Defendants to enforce or attempt to enforce agency fee collection. *See* 455 U.S. at 489; *see also Gabriele*, 466 F. Supp. 3d at 1098-99 (finding that, where it could not "reasonably be expected that the union defendants will resume withholding agency fees in contravention of *Janus*,"

plaintiffs' claims for injunctive and declaratory relief were moot as it similarly could not "reasonably be expected that these statutes will be used to collect fees in contravention of *Janus* in the future"). Therefore, given *Janus*'s controlling holding, Plaintiffs' arguments that "Defendants could never have demonstrated that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *see* Pls.' Opp'n State Defs.' MTD at 8-9 (citations and emphasis omitted), "Defendants could at any time impose another requirement for the payment of forced dues," *id.* at 9, and Defendants retain "the statutory authority to" impose agency fees, *id.* at 7, all are unavailing. As was true at summary judgment, Plaintiffs' filings now "contain[] nothing to suggest that any reversal to a pre-*Janus* view of the law is imminent," and their "real concern is some unknown event at some unknown time," SJ Order at 18, an event that would be expressly prohibited by controlling precedent from the nation's highest court. Accordingly, given the Supreme Court's holding in *Janus* and Defendants' actions post-*Janus*, as well as for the reasons discussed in the Court's order denying summary judgment, to the extent those are not addressed here, all of Plaintiffs' claims will be dismissed as moot.

### 2. Eleventh Amendment Immunity

"The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (internal quotation marks omitted); *Alabama v. Pugh*, 438 U.S. 781, 781 (1978) (per curiam) ("[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies."). And "it is difficult to think of a greater intrusion on state sovereignty than . . . a federal court instruct[ing] state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106.

In *Ex parte Young*, 209 U.S. 123 (1908), however, the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 155-56; *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005). "A plaintiff may sue a state official acting in his official capacity—not[]withstanding the Eleventh Amendment—for prospective injunctive relief from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (internal quotation marks omitted). Eleventh Amendment immunity may also be waived by Congress, *see Bd. of Tr. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001), or by the state, *see College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted); *see also State Empls. Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007) ("We are specifically required by *Ex parte Young* to examine whether there exists an ongoing violation of federal law." (emphasis omitted)); *Myers v. Semple*, No. 3:18-cv-505, 2018 WL 3553336, at *3 (D. Conn. July 23, 2018) ("[T]he *Ex parte Young* exception does not apply to declaratory relief against state officials in their official capacities when the relief relates only to past conduct and there is no ongoing violation of federal law.").

Both the State Defendants and the Union argue that, under the Eleventh Amendment, the Court lacks jurisdiction over Plaintiffs' request for a declaratory judgment invalidating the

Connecticut statute because there is no ongoing violation of federal law. *See* Union MTD at 12-13; State Defs.' Suppl. Br. at 3-4. As they argue, because, since *Janus* was decided, "[a]ll defendants immediately stopped collecting dues," and "the union then took the further step of refunding plaintiffs' dues paid in the past, up to the statute of limitations," "any claim that defendants will start to recover fair-share dues in the future is simply spurious" and the Eleventh Amendment should apply. State Defs.' Suppl. Br. at 4; *see also* Union MTD at 12-13.

Plaintiffs concede that the State Defendants' Eleventh Amendment claims were properly raised and preserved, but argue that the claims are "premature, as the question of attorneys' fees and expenses is not yet before the Court," and also are "wrong" on the merits. Pls.' Opp'n Union MTD at 7-8. In Plaintiffs' view, attorneys' fees and costs can, under Supreme Court and Second Circuit precedent, be awarded against state officials notwithstanding Eleventh Amendment immunity. *Id.*

The Court disagrees.

Plaintiffs' cited cases are inapposite for several reasons. First, this line of cases holds that "the Eleventh Amendment has no application to an award of attorneys' fees, ancillary to a grant of prospective relief, against a State." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989); *see also Gagne v. Maher*, 594 F.2d 336, 342 (2d Cir. 1979), *aff'd*, 448 U.S. 122 (1980) ("[T]he award of attorneys' fees . . . was a permitted 'ancillary effect' of a proper prospective decree and therefore not barred by the Eleventh Amendment."); *Class v. Norton*, 505 F.2d 123, 127 (2d Cir. 1974) (finding that where "[t]he district court made [an attorneys' fees] award incident to granting prospective relief: a multiple injunctive order to issue certain regulations, withdraw specified departmental directives, and make designated reports," such an award was "a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*" as it had only an

"ancillary effect" on the state treasury (emphasis added)); *Hutto v. Finney*, 437 U.S. 678, 684 (1978) (noting that "[t]he [district] court concluded that the constitutional violations identified earlier had not been cured" and "entered an order" regulating confinement conditions). Here, however, the Court has not, and will not, issue any judgment granting prospective relief against Defendants; therefore, any grant of attorneys' fees could not be considered "ancillary" to any such prospective decree.[4]

Second, in several of Plaintiffs' cited cases, attorneys' fees were imposed at least in part due to bad faith by defendants. *See, e.g.*, *Hutto*, 437 U.S. at 684-85 (noting that the district court "gave detailed consideration to the matter of fees and expenses, made an express finding that petitioners had acted in bad faith, and awarded" fees); *Class*, 505 F.2d at 127 (after finding that the Eleventh Amendment did not "immunize the Commissioner from liability in his official capacity" and "underlin[ing] the forward-looking, deterrent nature of [its] award," observing that attorneys' fees against a defendant "may be an extraordinary measure, but is warranted where bringing of the action should have been unnecessary and was compelled by unreasonable, obdurate obstinacy" (internal quotation marks and alterations omitted)). Plaintiffs have set forth no claim that Defendants have unduly delayed the proceedings or have otherwise acted in bad faith, nor does their request for attorneys' fees make this claim; rather, Plaintiffs argue that they are entitled to attorneys' fees on the ground that they are the prevailing party under § 1988. *See* Fee Mot.; Mot. for Reconsideration.

Accordingly, because Plaintiffs have set forth no ongoing violation of federal law, the Court lacks jurisdiction over Plaintiffs' request for a declaratory judgment. *See, e.g.*, *Diamond v.*

---

[4] Any claims for money damages against the State Defendants in their official capacities are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

*Penn. State Educ. Ass'n*, 399 F. Supp. 3d 361, 379 (W.D. Pa. 2019), *aff'd*, 972 F.3d 262 (3d Cir. 2020) ("Because Plaintiffs sue Commonwealth Defendants without alleging that those Defendants continue to enforce an unconstitutional Pennsylvania statute, . . . this Court must dismiss Plaintiffs' claims . . . because there is no allegation of an ongoing violation of federal law, and the Eleventh Amendment thus bars suit against the Commonwealth Defendants.").

### 3. Good Faith Immunity

In the Second Circuit, "a party who complied with directly controlling Supreme Court precedent in collecting fair-share fees cannot be held liable for monetary damages under § 1983," as part of a "good-faith defense." *Wholean*, 955 F.3d at 334, 334. In *Wholean*, the Second Circuit held that the defendant union who, before *Janus*, collected fair-share fees, but after *Janus*, ceased deducting and refunded any such fees, could not "reasonably be deemed to have forecasted whether, when, and how *Abood* might be overruled," but instead "were entitled to rely on directly controlling Supreme Court precedent, and in good faith, they did so." *Id.* at 336.

The Union argues that under *Wholean*, it could not be held liable for monetary judgments for agency fees collected before *Janus*, nor could it be held liable for any future claim for additional reimbursement of previously collected fees since the Court's 2018 summary judgment ruling. Union MTD at 14. As the Union argues, "*Wholean* is directly controlling with respect to Plaintiff's claims in this case," because the Union, "[j]ust like the union in *Wholean*," "collected fair share fees in accordance with . . . *Abood*, and before the Supreme Court issued its decision in *Janus*." *Id.* The State Defendants also argue that good faith immunity applies to the Union under *Wholean*. State Defs.' Suppl. Br. at 4-5.

Plaintiffs argue that the good faith arguments raised by Defendants are untimely, as the defense "was not raised in their most recent Answers." Pls.' Opp'n Union MTD at 5-6.

27

The State Defendants argue on reply that the good faith defense "did not become relevant until recent developments in this litigation," as *Wholean* was decided in 2020, after the Court's ruling on summary judgment and the Second Circuit's remand to this Court. State Defs.' Suppl. Reply at 4. As the State Defendants argue, "this is the first opportunity for such a defense to be raised in this matter." *Id.* Both the State Defendants and the Union also argue that issues of subject matter jurisdiction are never waived and can be asserted at any time. *Id.*; *see also* Union MTD Reply at 2. Finally, the Union argues that the *Wholean* decision supports a conclusion that Plaintiffs cannot state a claim, an affirmative defense the Union set forth in its Answer. *Id.*

The Court agrees.

Though the Court is aware of no precedent discussing *Wholean*'s specific applicability to jurisdictional challenges under Rule 12(b)(1) or challenges for failure to state a claim under Rule 12(b)(6), the Court finds that the defense would, in either case, effectively immunize the Union from liability judgments for monetary fees collected before *Janus*.

To the extent that the good-faith defense articulated in *Wholean* goes to an argument that Plaintiffs have failed to state a claim under Rule 12(b)(6), several district courts have concluded that *Wholean* applies in this context. *See, e.g.*, *Pellegrino v. N. Y. State United Teachers*, No. 18-CV-3439 (NGG) (RML), 2020 WL 2079386, at *2 (E.D.N.Y. Apr. 30, 2020) (finding where defendant moved to dismiss on Rule 12(b)(6) that "because *Wholean* is nearly identical to the case at hand, its holding . . . completely forecloses Plaintiffs' only remaining claim"); *Mattos v. Am. Fed. of State, Cty. and Mun. Empls., AFL-CIO, Council 3*, No. GLR-19-2539, 2020 WL 2027365, at *2 (D. Md. Apr. 27, 2020) (granting Rule 12(b)(6) motion to dismiss on the ground that the good faith defense applied, finding that "[b]ecause collecting fees from non-members was consistent with both state law and Supreme Court jurisprudence at it existed at the time, AFSCME

is entitled to the good-faith defense under § 1983"). The Union asserted an affirmative defense based on Plaintiffs' failure to state a claim. Union Answer I at 7; Union Answer II at 10.

To the extent that the good-faith defense instead implicates this Court's subject-matter jurisdiction over the case, similar to Eleventh Amendment immunity, the Court retains the ability to address those claims at any time. *See Turner v. Boyle*, 116 F. Supp. 3d 58, 73 (D. Conn. 2015) ("The Eleventh Amendment divests the court of subject matter jurisdiction over claims for monetary damages brought against the State, or against a state employee in his official capacity. . . ." (citing *Graham*, 473 U.S. at 169)); *Williams v. Marinelli*, 987 F.3d 188, 196 (2d Cir. 2021) (rejecting Plaintiff's argument that Defendant had waived its Eleventh Amendment immunity, noting that it "nonetheless must consider the Eleventh Amendment issue because, if the relief sought by [Plaintiff] would violate the Amendment, we would lack the power to grant it" (citing *Atlantic Healthcare Benefits Tr. v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) (raising Eleventh Amendment immunity *sua sponte* "because it affects [the Second Circuit's] subject matter jurisdiction"))).

Accordingly, though the Court's finding that the case is mooted in its entirety by *Janus* and Defendants' post-*Janus* actions is sufficient to grant Defendants' motions to dismiss, the Court also concludes that the good-faith defense provides an additional basis to dismiss Plaintiffs' claims against the Union.[5][6]

---

[5] Plaintiffs also argue that the *Wholean* good-faith defense does not apply to the State Defendants, as they are public officials. Pls.' Opp'n Union MTD at 7. The State Defendants, however, do not make this argument, and instead concede that the *Wholean* defense "applies only to the [U]nion rather than the state." State Defs.' Suppl. Reply at 5. Instead, the State Defendants argue that the doctrine of qualified immunity bars liability for those Defendants, to the extent Plaintiffs' claims may be construed against them in their individual capacities. *See id.* As the Court does not construe the claims against the State Defendants to be made in their individual capacities, and given the Court's findings as to mootness, the Court need not, and does not, address the qualified immunity issue.

[6] Plaintiffs argue that "deny[ing] relief to [them] here would virtually read out the obligations of the [f]ederal courts to give full retroactive effect to a rule of [f]ederal law decided by the Supreme Court." Pls.' Opp'n Union MTD at 3 (citing *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993)). As the Second Circuit observed in *Wholean*, however,

The Court therefore will dismiss all of Plaintiffs' claims.[7]

## B.  Motion for Reconsideration

Plaintiffs move for reconsideration of the Court's order denying attorneys' fees and expenses, arguing that (1) Defendants' refunds of prior-withheld agency fees was not "unilateral," but rather, were made under terms negotiated at settlement, which the Court allegedly overlooked in its order, Mot. for Reconsideration at 4-5; and (2) the Court's order will disincentivize parties from participating in settlement and/or from accepting complete substantive relief in settlement negotiations, and further is "at odds" with the statutory purposes of § 1988, *id.* at 5-7.

Plaintiffs attach to their motion an e-mail from Magistrate Judge Holly Fitzsimmons, *see* ECF No. 203-3 (dated Aug. 2, 2018) ("Fitzsimmons Letter"), a responsive e-mail from State Defendants' counsel Richard Sponzo to Plaintiffs' counsel and Magistrate Judge Fitzsimmons, *see* ECF No. 203-4 (dated Aug. 7, 2018) ("Sponzo Letter"), and a declaration of Plaintiffs' counsel

---

directly citing *Harper* in comparison, "nothing in *Janus* suggests that the Supreme Court intended its ruling to be retroactive," as "the *Janus* Court held that 'States and public-sector unions may no longer extract agency fees from nonconsenting employees,' *Janus*, 138 S. Ct. at 2486 . . ., and the Supreme Court reversed and remanded for further proceedings rather than apply its new rule to the parties before it." 955 F.3d at 336 (emphasis omitted). Even if this Court were to, as some others have, "assume without deciding that the right announced by the Supreme Court in *Janus*[] is retroactive," *Diamond*, 972 F.3d at 268 n.1; *see also Danielson*, 945 F.3d at 1099 ("[W]e will assume that the right delineated in *Janus* applies retroactively and proceed to a review of available remedies."), the Court nonetheless would conclude that, given Defendants' actions post-*Janus*, Plaintiffs' claims are moot. Moreover, "[e]ven if *Janus*[] is retroactive, the good faith defense may constitute a 'previously existing, independent legal basis for denying [Plaintiffs'] claims." *Diamond*, 972 F.3d at 269 n.1.

[7] Plaintiffs also have provided to the Court the Supreme Court's recent decision in *Uzuegbunam v. Preczewski*, 592 U.S. __, (2021), 2021 WL 850106, as supplemental authority in support of their opposition to the motions to dismiss. *See* Pls.' Suppl. Opp'n. In *Uzuegbunam*, the Supreme Court held that a request for nominal damages satisfies the redressability element necessary for Article III standing where a plaintiff's claim is based on a completed violation of a legal right. *See* 592 U.S. ___. *Uzuegbunam*, however, is distinguishable: as the Court explained in its summary judgment order, "[b]ecause Mr. Lamberty and Mr. Mercer have proof of actual injury, the previously withheld agency fees, and have received compensatory damages through the Union's reimbursement of these fees, there is no basis for the awarding of nominal damages," as it is "well-settled that plaintiffs are not entitled to nominal damages where they have also received compensatory damages." SJ Order at 15-16 (citing *Gentile v. Cty. of Suffolk*, 926 F.2d 142, 155 (2d Cir. 1991)); *see also Johnson v. City of Saginaw*, No. 17-cv-13174, 2021 WL 927371, at *5 n.3 (E.D. Mich. Mar. 11, 2021) (slip op.) (observing that in *Uzuegbunam*, "the Supreme Court held that 'a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right,'" and that "[n]ominal damages are not a consolation prize for the plaintiff who pleads, but fails to prove, compensatory damages," but "the Court did not hold that nominal damages must be awarded on demand when the plaintiff also seeks compensatory and punitive damages" (quoting *Uzuegbunam*, 2021 WL 850106, at *6-7))

W. James Young, *see* Decl. of W. James Young in Supp. of Pls.' Mot. for Reconsideration, ECF No. 203-2 (Sept. 13, 2019) ("Young Decl."). As Plaintiffs argue, the e-mails from Magistrate Judge Fitzsimmons and Mr. Sponzo, as well as the substance of their settlement negotiations, led Plaintiffs to believe during settlement that Defendants and the Court "had already recognized them as 'prevailing parties,' and that the only remaining dispute was over the proper amount of their compensable fees and costs." Mot. for Reconsideration at 6-7; Young Decl. ¶ 3.

Both sets of Defendants object to the motion for reconsideration. *See* Union Obj. Reconsideration; State Defs.' Obj. Reconsideration. Defendants argue that Plaintiffs have failed to set forth any legal evidence of any controlling decisions or data that the Court overlooked and instead reiterate arguments that have already been considered by the Court. *See* Union Obj. Reconsideration at 1; *see also* State Defs.' Obj. Reconsideration at 1-2. Defendants also argue that Plaintiffs' reliance on statements made during settlement negotiations is improper and, in any event, that this information does not suffice to warrant reconsideration of the Court's order. *See* Union Obj. Reconsideration at 2 (arguing that "evidence of statements made during settlement discussions [is] not admissible" under Federal Rule of Evidence 408); State Defs.' Obj. Reconsideration at 2-4 (arguing that reliance on settlement negotiations is "impermissible per se," that Plaintiffs omitted the context of the settlement discussions, and that their participation in settlement negotiations, and Mr. Sponzo's e-mail communication, did not constitute a "concession or waiver" but rather merely "suggest[ed] the potential availability of attorney's fees by settlement rather than judgment").

The Court agrees.

Federal Rule of Evidence 408 provides, in relevant part:

> (a) Prohibited uses. Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity

of, or amount of a claim that was disputed as to validity or
amount, or to impeach through a prior inconsistent statement or
contradiction:

(1) furnishing or offering or promising to furnish or accepting
or offering or promising to accept a valuable consideration
in compromising or attempting to compromise the claim;
and

(2) conduct or statements made in compromise negotiations
regarding the claim....

Fed. R. Evid. 408. "The Rule 'essentially forbids a court from basing adverse findings on a party's

concessions in settlement negotiations.'" *Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC*,

739 F. Supp. 2d 125, 129 (D. Conn. 2010) (quoting *Rein v. Socialist People's Libyan Arab

Jamahiriya*, 568 F.3d 345, 351 (2d Cir. 2009)). Rule 408, however, "has limits," including that

"evidence regarding settlement negotiations is admissible if used for a purpose other than one of

those expressly prohibited by the Rule," *id.* (citing *PRL USA Holdings, Inc. v. U.S. Polo Ass'n*,

520 F.3d 109, 114 (2d Cir. 2008)), and that "the Rule does not operate to exclude evidence when

the validity or amount of the claim was not disputed," *id.* (citing *Pierce v. F.R. Tripler & Co.*, 955

F.2d 820 (2d Cir. 1992)).

Here, Plaintiffs seek to introduce settlement-related communications to prove the validity

of its claim that it is entitled to attorneys' fees as the allegedly prevailing party and to impeach

Defendants' claim that they took various actions, including refunding prior-withheld agency fees

and issuing guidance as to post-*Janus* protocols, under *Janus* and not with the purpose of mooting

the claim. *See, e.g.*, Mot. for Reconsideration at 4-5 ("[T]he Court appears to have overlooked this

point in declaring Defendants' hasty efforts to moot the case as 'unilateral.' . . . As a matter of fact,

they were not, because they came out of the commendable settlement efforts of Magistrate Judge

Fitzsimmons."); *id.* at 5 ("[A]s demonstrated by Magistrate Judge Fitzsimmons'[s] e[-]mail to

counsel, [Plaintiffs'] entitlement to fees and costs was also agreed to by the parties; the only dispute was as to amount."). Rule 408, then, bars consideration of these communications for purposes of determining whether Plaintiffs are entitled to an attorneys' fees award. [8]

Even if these statements were admissible, however, the communications relied upon by Plaintiff are insufficient to warrant reconsideration of the Court's order, as these would not "alter the conclusion reached by the [C]ourt." *Shrader*, 70 F.3d at 257.

The Court based its denial of attorneys' fees and expenses on one ground: that Plaintiffs were not prevailing parties under § 1988. *See* Fee Order at 2, 10-17. As the Court concluded, its summary judgment order held only "that *Janus* had the effect of mooting the Plaintiffs' claims for prospective injunctive and declaratory relief," and that the only distinct "relief" arguably achieved by Plaintiffs, "independent of the result in *Janus*, was on their claim for actual damages for the [Union]'s reimbursement of the previously-withheld agency fees," which the Court held was mooted by the Union's decision to reimburse those fees. *Id.* at 11. As the Court held, § 1988 "does not provide relief for plaintiffs when their actions had no bearing on the intervening Supreme Court result." *Id.* at 12. Therefore, because the Court "did not provide Plaintiffs with an enforceable judgment the merits or court-ordered consent decree, . . . the ruling provided nothing of value to Plaintiffs whatsoever," *id.* at 16 (citations omitted), and Plaintiffs were "not prevailing parties under § 1988," *id.* at 17.

Beyond their attempt to introduce settlement negotiations for the Court's consideration, Plaintiffs offer no evidence as to a "change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd.*, 956 F.2d

---

[8]Though some courts have held that a court may consider settlement negotiations "for the purpose of deciding a reasonable attorney fee award," *see, e.g.*, *Ingram v. Oroudjian*, 647 F.3d 925, 927 (9th Cir. 2011), these cases have concerned the Court's determination of the proper amount of attorneys' fees, rather than whether parties were liable for such fees, as is the case here.

at 1255. Specifically, nothing set forth in Plaintiffs' motion for reconsideration changes the Court's conclusion that, given the Court's disposition at summary judgment, Plaintiffs were not prevailing parties under § 1988. SJ Order at 17. Indeed, given the Court's grant of the State Defendants' and Union's motions to dismiss, *see supra*, finding Plaintiffs to be prevailing parties would be an absurd result.

Furthermore, to the extent Plaintiffs rely on policy-oriented arguments to assert that this Court's denial of attorneys' fees in this case would disincentivize parties from accepting substantive relief or from participating in Court-ordered settlement, the Court notes that finding the opposite way—namely, permitting communication undertaken as part of settlement negotiations to be considered as part of the Court's determination on whether Defendants may be assessed attorneys' fees—also likely would have significant consequences. *See, e.g.*, *Master-Halco, Inc*, 739 F. Supp. 2d at 129 ("[T]he Rule is based on the policy of promoting the compromise and settlement of disputes, by taking into account the reality that permitting the consideration of settlement offers as reflecting an admission of liability would discourage parties from discussing settlement or making settlement offers." (quoting 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Fed. Evid.* § 408.02[1] (Joseph M. McLaughlin ed., 2d ed.))).

Accordingly, the Court denies Plaintiffs' motion for reconsideration of the Court's order denying attorneys' fees and expenses[9] and, for the same reasons, also denies Plaintiffs' oral motion to modify their request for attorneys' fees to include additional fees incurred since last filing.

---

[9] The Union argues in its motion to dismiss that "[s]ince the Court lacks jurisdiction over this action, it also lacks jurisdiction with respect to Plaintiffs' motion for reconsideration." Union MTD at 14-15. As the Court previously ruled on Plaintiffs' motion for attorneys' fees after denying summary judgment on mootness grounds, however, and absent support from the Union for its proposition that granting dismissal would deprive the Court of jurisdiction to decide the motion for reconsideration, the Court addresses the motion on the merits.

## IV.     CONCLUSION

For the reasons explained above, the Court **GRANTS** the State Defendants' and the State Police Union's motions to dismiss.

The Court also **DENIES** Plaintiffs' motions for reconsideration and to modify their request for attorneys' fees to include additional fees incurred since last filing.

The Clerk of Court is respectfully directed to enter judgment for Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 26th day of March, 2021.

                                                    /s/ Victor A. Bolden
                                                  Victor A. Bolden
                                                  United States District Judge